## COMMONWEALTH *vs.* EDWARD CRUZ.

No. 99-P-1427.

Essex. November 7, 2000. - October 22, 2001.

Present: BROWN, PERRETTA, JACOBS, GREENBERG, & GELINAS, JJ.[1]

*Arrest. Search and Seizure,* Probable cause, Protective sweep, Plain view. *Probable Cause. Constitutional Law,* Search and seizure. *Evidence,* Hearsay. *Practice, Criminal,* Argument by prosecutor.

In a criminal case, there was no error in the judge's conclusion that the arrest, on an informant's tip, of a codefendant on charges of trafficking in cocaine and conspiracy to violate the controlled substance laws was based on probable cause, where the police had supervised the informant's arrangement of the cocaine delivery and events unfolded as predicted by the informant, confirming her basis of knowledge, and where, although there was no showing of previous circumstances establishing the informant's reliability, the identity of the informant was known to the police, certain facts corroborated by the police were not of public knowledge, the informant was in direct contact with the defendant, and certain information heard by a police officer provided the necessary indication of suspected criminal behavior. [29-30]

In a criminal case, the judge erred in denying the defendant's motion to suppress telephone cloning equipment seized without a warrant after an initial protective search of an apartment and during the time that a search, pursuant to a warrant for drugs and drug-related items, was being conducted by police, where, although the search for drug-related items was authorized by warrant, the search for telephone cloning equipment — from all appearances a separate search, conducted by a separate, special team of experts — was not, and where the Commonwealth failed to meet its burden that the warrantless seizure of the telephone cloning equipment was justified under the plain view doctrine. [30-36] GREENBERG, J., concurring in part and dissenting in part, with whom GELINAS, J., joined.

There was no error requiring reversal in a criminal case with respect to alleged "prosecutorial error" and ineffective assistance of counsel involving hearsay testimony elicited from a police officer, depicting the officer as having contacts with informants so that the jury would infer that the

[1]This case was initially heard by a panel comprised of Justices Brown, Greenberg, and Gelinas. Thereafter, the case was submitted on the record and briefs to Justices Perretta and Jacobs, both of whom took part in the decision of this case in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

defendant was a drug dealer, where, as limited by instructions by the judge, the testimony was properly admitted to allow the officer to explain what he did in consequence of conversations with others, and where, since the jury already knew that the defendant was charged with drug trafficking, the challenged testimony had but slight effect. [36-37]

The prosecutor in a criminal case, in arguing the evidence and its fair inferences, was entitled to refer in closing argument to a police officer's having initiated a drug transaction by using the defendant's telephone pager number obtained from a named informant. [37]

INDICTMENTS found and returned in the Superior Court Department on September 11, 1996.

A pretrial motion to suppress evidence was heard by *Richard E. Welch, III,* J., and the cases were tried before *Peter M. Lauriat,* J.

*Wendy H. Sibbison* for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted of trafficking in cocaine having a net weight of twenty-eight grams or more, G. L. c. 94C, § 32E; conspiracy with a codefendant, Brandy Hartzog, to violate the controlled substance laws, G. L. c. 94C, § 40; telecommunications fraud, G. L. c. 166, § 42A; unlawful possession of telecommunications equipment, G. L. c. 166, § 42B; and larceny of property exceeding $250 in value, G. L. c. 266, § 30. Prior to trial, the defendant filed a motion to suppress evidence seized from his apartment at the time of a search pursuant to a warrant for drug and drug-related items, procured after a "protective sweep" of the apartment. After an evidentiary hearing, a Superior Court judge denied the suppression motion. The case against the defendant proceeded to trial with Hartzog as a witness for the prosecution under a plea agreement. A jury found the defendant guilty on all of the charges.

On appeal, the defendant argues that his suppression motion should have been allowed because the police lacked probable cause to arrest Hartzog, rendering the subsequent seizure of cocaine from her person and the search of the apartment occupied by them unlawful. In addition, the defendant contends that the seizure of cellular telephone equipment and related unlawful telephone cloning paraphernalia was not authorized by

the search warrant and should have been suppressed. On that basis, he argues that the Commonwealth's evidence pertaining to telecommunications fraud and possession of unlawful telecommunications devices was insufficient. He also challenges the admission of certain evidence concerning his past drug-dealing endeavors and contends that portions of the prosecutor's closing argument were improper.

1. *Denial of the suppression motion.* After a hearing at which Duane Kennefick, a State police officer, testified, the judge issued a seventeen-page memorandum of decision containing his findings of fact. We summarize relevant portions of those findings, supplemented by uncontroverted testimony at the motion hearing. See *Commonwealth* v. *Watson*, 430 Mass. 725, 726 n.5 (2000).

During May, 1996, State police Officer Thomas Coffey enlisted the help of an untested informant concerning a drug-dealing operation in the Haverhill area. Based on information obtained from this informant and another identified informant who was a drug user willing to cooperate with the police because of pending criminal charges against her husband, Coffey and other officers of the Essex County drug task force initiated a surveillance of the defendant's and Hartzog's joint residence at 24 Iris Way in Haverhill. On June 19, 1996, Coffey had Kennefick set in motion a chain of events that led to the arrest of the defendant and Hartzog. They instructed the first untested, but known, informant to page the defendant to make a purchase of cocaine, the delivery of which would take place at the informant's residence.[2] Other officers conducting a surveillance of the defendant's apartment would track the delivery. One-half hour after the surveillance began, the police saw Hartzog leave the apartment, apparently in response to the informant's telephone call. They followed her to the rendezvous point. When the police approached, she placed a small paisley

---

[2] Officer Coffey had previously, in a meeting with the first unidentified informant, personally dialed the pager number that both confidential informants said belonged to the defendant and listened to the incoming call in response to the page. He heard the confidential informant order one ounce and five "eight balls" of cocaine from a male called "Mike" and heard "Mike" say that because he was out of town he would take care of the order after he returned in three days.

bag on the roof of the car, unnoticed by them. Asked, "Where is it?" Hartzog pointed to the roof of the car. The police seized the bag and she was placed under arrest.

Fearful that her failure to return to 24 Iris Way would tip off the defendant that the deal had gone awry — and that the evidence related to their drug-dealing operation would be at risk — Kennefick went to 24 Iris Way to secure the apartment, by assigning officers to watch it, and made a protective sweep of the apartment. The defendant answered the door, and an officer stayed with him while Kennefick looked through the apartment to make sure no one else was there.[3] The judge found that, "while upstairs, Kennefick entered an area that was set up like an office and noticed computer equipment together with a small black box . . . in plain view." Kennefick had seen such a device once before and thought it might be cellular telephone cloning equipment.[4] He suspected those items could be used for an unlawful purpose but was not sure.

Without removing anything, and leaving two Haverhill officers to secure the apartment, Kennefick returned to his office to prepare an application for a search warrant. By that time, the defendant had been placed under arrest for dealing in cocaine and brought in for routine booking.

Neither the application and accompanying affidavit nor the warrant obtained to search 24 Iris Way mentioned anything about cellular telephone cloning equipment. The warrant dealt solely with the seizure of evidence related to illegal narcotics distribution. While at his office to prepare the application for the warrant, Kennefick contacted State Trooper Kevin C. Hogaboom, who had special training with the cellular fraud unit, and requested his assistance. Hogaboom assembled a search team who were familiar with the equipment used in cellular technology and specially trained in cellular fraud, composed of two United States Secret Service special agents and a telephone

---

[3] An infant was found asleep in a first-floor bedroom.

[4] A cloned cellular telephone is one in which the mobile identification number (MIN) — the telephone number assigned to that cellular telephone — and the telephone's unique internal electronic serial number (ESN) have both been altered to allow the user to make calls that are billed to a legitimate customer of the cellular telephone service. Cloning requires a match of both the MIN and ESN of a legitimate telephone. ·

company (Bell Atlantic NYNEX Mobile) employee, to join him and the other officers in the search of the apartment.

Kennefick returned with a warrant to search the apartment and its storage areas, including the garage, for evidence of drug trafficking. In a utility closet off the living room, the officers found a black knapsack — which Hartzog identified as belonging to the defendant — containing more than a kilogram of boric acid, two digital scales, and other items associated with cocaine trafficking. In the master bedroom, the defendant's wallet, containing $2,105 in cash, was found. From the floor of the bedroom, the officers recovered an extra-large tee shirt with the recipe for making crack cocaine displayed on the back. In the upstairs office area were two notebooks containing records and notes of narcotics transactions. Hartzog later identified the defendant's handwriting in each notebook.

While the police were executing the search warrant, Hogaboom and his team arrived. Kennefick handed Hogaboom a cellular telephone that he had found in his search of the defendant's car, which was parked in the garage. Hogaboom tested it and found that it had been altered; it was a Motorola telephone, but its serial number began with digits assigned to another brand of cellular telephones. Hogaboom and his colleagues then fanned out through the apartment.

On an ironing board in the master bedroom, Hogaboom found a device used to reprogram telephones and serial numbers of cellular telephone sets. He also discovered a scanner and programmer, a sophisticated and expensive piece of equipment capable of capturing telephone and serial numbers from the airwaves. Both devices, a Motorola program box and a "copycat" box used exclusively to clone cellular telephones, are illegal.

Beside the telephone cloning equipment was a list of MIN and ESN numbers, see note 4, *supra*, in matched pairs. The list, which could have been generated by the scanner, included 200 telephone numbers owned by the Cellular One Company, including the number that had been programmed into the Motorola telephone. Upstairs, Hogaboom's team found computers and other electronic equipment, including what is known as a double

"E" prong box, a second list of MIN and ESN numbers, and instructions for telephone cloning.

a. *Probable cause to arrest Hartzog.* We need not pause long to consider the defendant's first contention, that the arrest of Hartzog was unlawful and tainted the subsequent search of the apartment. The information the police obtained and corroborated satisfies both prongs of the *Aguilar-Spinelli* test. See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969). See also *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985). Independent police corroboration of a detailed tip may compensate for deficiencies in either or both prongs of the test. *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990). See *Commonwealth* v. *Spence*, 403 Mass. 179, 181 (1988). We continue to use the *Draper* standard (*Draper* v. *United States*, 358 U.S. 307, 309-310, 313-314 [1959]) as a "benchmark" for what is needed to illustrate the necessary level of detail for corroboration. *Commonwealth* v. *Robinson*, 403 Mass. 163, 165-166 (1988). *Commonwealth* v. *Cast*, 407 Mass. at 896. In this case the information supplied by the two untested informants proved accurate. The vehicle Hartzog drove to the rendezvous fit the description given by the informant, and the approximate time that elapsed between the time of the informant's call to arrange the sale and Hartzog's ultimate meeting with the informant corroborated the informant's account. The information corroborated in this case compares favorably with the facts in *Draper* and in cases where the Supreme Judicial Court has applied *Draper* and found sufficient detail to show the information was based on personal knowledge. See *Commonwealth* v. *Robinson*, 403 Mass. at 165-166; *Commonwealth* v. *Santana*, 403 Mass. 167, 168, 171 (1988); *Commonwealth* v. *Farrow*, 403 Mass. 176, 177-178 (1988). Compare *Commonwealth* v. *Brown*, 31 Mass. App. Ct. 574, 577 (1994). The initial informant proved to have firsthand knowledge of the details she provided, including the defendant's beeper number (the same number was provided by the second confidential informant and its accuracy confirmed by a call to the number, which a police officer listened to), his practice of contacting the buyer only if paged first, that he lived with Hartzog, and that Hartzog sometimes acted as a courier. As the motion judge

found, the police supervised the informant's arrangement of the cocaine delivery, and "events unfolded as predicted by the informant," confirming her basis of knowledge. See *Commonwealth* v. *Welch*, 420 Mass. 646, 651-652 (1995).

With regard to the veracity prong of the test, there was no showing of previous circumstances establishing reliability. However, the identity of the informant was known to the police. See *Commonwealth* v. *Bakoian*, 412 Mass. 295, 301 (1992); *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 635 (1997). In addition, while many of the facts corroborated by the police were public knowledge, other facts, such as the beeper number, were not. Additionally, the police ascertained that the informant was in direct contact with the defendant, a circumstance enhancing her credibility. See *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. at 636. Finally, the fact that Officer Coffey heard the person identified as "Mike" who responded to the pager call say he would deliver the requested drugs in a few days, after he returned from his trip, provided the necessary indication of suspected criminal behavior to support a finding of probable cause. See *Commonwealth* v. *Welch*, 420 Mass. at 653; *Commonwealth* v. *Barros*, 435 Mass. 171, 177 (2001). There was no error in the judge's conclusion that Hartzog's arrest was based on probable cause.

b. *Search of apartment.* A far more perplexing problem is the legality of the warrantless search of the apartment that occurred after the initial protective sweep search of the apartment and during the time that the search pursuant to a warrant for drugs and drug-related items was being conducted. As already described above, during a protective sweep search of the apartment immediately after Hartzog's arrest, Officer Kennefick noticed "in plain view" computer equipment and a small black box which he thought (although he was not sure) might be cellular telephone cloning equipment. After leaving two police officers to guard the apartment, Kennefick applied for and obtained a warrant solely to search the apartment for drug and drug-related items. However, he also called in, for assistance in the search, a State trooper who had expertise in cellular fraud; the trooper then assembled a team of experts in such fraud —

two Federal special agents and a NYNEX Company employee.[5] This team went to the defendant's apartment and conducted a search for cellular telephone cloning equipment at the same time Kennefick and other officers, who had already arrived at the apartment, were conducting the search for drug and drug-related items. As noted, although the search for drug-related items was authorized by warrant, the search for telephone cloning equipment — from all appearances a separate search, conducted by a separate, special team of experts — was not. Whether denominated a continuation of the initial protective sweep search or some other form of warrantless search, the search was improper.

In many respects, this case resembles the situation in *Commonwealth* v. *Lewin*, 407 Mass. 617, 623-627 (1990). There, after conducting a proper sweep search of the defendant's apartment, police on the scene summoned an officer with specialized training to look for secret hiding places in which illegal drugs might have been stowed. The Supreme Judicial Court in *Lewin*, following principles delineated in *Maryland* v. *Buie*, 494 U.S. 325, 332-336 (1990), held that the right to conduct a warrantless sweep search ended once officers had determined that there was no one on the premises who posed a danger to police. *Commonwealth* v. *Lewin*, 407 Mass. at 624. Extending the scope of the sweep search to include assistance from a police expert was unlawful. On that basis, the Supreme Judicial Court suppressed all evidence derived from observations made outside the legitimate scope of the initial protective sweep. *Id.* at 626-627.[6] Similarly, it was improper for Kennefick to have called in a team of experts to examine the suspected cloning equipment in a subsequent search unauthorized by a warrant.

If the police had probable cause to believe that the defendant was involved in telecommunications fraud, they should have

---

[5]This information is drawn from the return filed by State Trooper Hogaboom.

[6]For other cases discussing the limits of protective sweep searches, see *Commonwealth* v. *Dubois*, 44 Mass. App. Ct. 294, 295-297 (1998); *Commonwealth* v. *Nova*, 50 Mass. App. Ct. 633, 635-638 (2000) (protective sweep search may be conducted only for the narrow purpose of ferreting out persons who might pose a danger to police, and only where there is good reason to believe such a threat exists). This search far exceeded those bounds.

obtained a warrant to search for evidence of same. Because the search and seizure of the telephone cloning equipment were not authorized by a warrant, the defendant's motion to suppress that equipment should have been allowed.

The Commonwealth contends that, because the items were seized during a search pursuant to a warrant for drugs and drug-related items and were discovered in "plain view" during the initial sweep search and during the search under the warrant, their seizure was proper. Compare *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999).

The first problem with this contention is that the team that conducted the search for cloning equipment was a separate team that entered the apartment after the execution of the search warrant for drugs — by four other police officers — had already begun. Here, although the warrant only authorized a search for drugs and drug-related items, the trooper assembled a team of three specially trained experts, including an employee of a private telephone company, apparently solely and specifically to search the already secured apartment for items not authorized by the warrant. Compare *United States* v. *Ewain*, 88 F.3d 689, 694-695 (9th Cir. 1996) ("[i]nviting another officer [with additional expertise] . . . not *ipso facto* improper," although it might be evidence bearing on probability officers looked in places they would not have if they had only been searching for items specified in warrant; held search did not go outside scope of warrant where single postal inspector was invited, for his expertise on postal theft, on search for drugs, because officers did not look anywhere than where they otherwise would have looked). The search was thus made without a finding of probable cause by a magistrate and without a warrant to "guide[] law enforcement officials as to the permissible scope of the search, particularly describing . . . the items to be seized." *Commonwealth* v. *Guaba*, 417 Mass. 746, 755 (1994). Such a search raises a spectre of the prohibited general warrant and violates the particularity requirements of art. 14 of the Massachusetts Declaration of Rights and G. L. c. 276, § 2. See *Commonwealth* v. *Rutkowski*, 406 Mass. 673, 674-675 (1990); *Commonwealth* v. *Guaba*, 417 Mass. at 753, 755 (holding that absence of warrant in hand at search violates particularity

requirement of art. 14 and G. L. c. 276, § 2). Cf. *Commonwealth* v. *Bond*, 375 Mass. 201, 206 (1978) (plain view discovery must occur in search to find items designated in warrant, "not merely a general exploratory search or a search pointed to things known or suspected to be present but not mentioned in the warrant").

There is another serious problem with the seizure of the telephone cloning equipment — a defect that provides an independent alternative basis for reversal of the motion judge's order. As already mentioned, the Commonwealth, as well as the motion judge, justify the seizure of the telephone cloning equipment under the "plain view doctrine." That exception to the warrant requirement permits police to seize property not described in a warrant provided (1) the officers are lawfully in the place where the seized items are observed, and (2) the "incriminating character [of the object seized] is *immediately apparent*" (emphasis supplied), and (3) the officers have a lawful right of access to the object.[7] *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting from *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993).

Here, the only evidence introduced at the motion hearing regarding the "incriminating character" of the cloning equipment was supplied by Officer Kennefick, one of the officers who conducted the protective sweep.[8] He testified:

---

[7]Probable cause, not just reasonable suspicion, must be shown to justify a warrantless "plain view" seizure under the Fourth Amendment to the United States Constitution. *Arizona* v. *Hicks*, 480 Mass. U.S. 321, 326 (1987).

Massachusetts cases in the past have also required that the police officers come across the item inadvertently, *Commonwealth* v. *Santana, supra,* a requirement that has been rejected by the United States Supreme Court for purposes of the Fourth Amendment to the United States Constitution. *Horton* v. *California*, 496 U.S. 128, 130 (1990). The Supreme Judicial Court has not decided whether to retain that requirement for Massachusetts cases. *Commonwealth* v. *D'Amour*, 428 Mass. at 731 & n.9. We need not consider that issue here.

[8]Officer Kennefick testified that, during the initial protective sweep search, he had noticed "a whole line of computer equipment" and "a little black box." The motion judge found that "the small black box" observed by Kennefick in the initial sweep search was in "plain view." There was no testimony, and no finding by the motion judge, whether the items other than the computer and the small black box were "in plain view."

> "There was a little black box I saw there. And I had seen it once before, and I believed at that time it could be telephone cloning equipment . . . . [Later, while preparing the search warrant,] I called Kevin Hogaboom, who's a trooper assigned to the cellular fraud unit for the State police. I told him . . . that I would like to have him come look at it, so if it was any illegal material, it would not be left behind."

And later, under cross-examination, defense counsel asked, "Now, you had, maybe, some suspicion as to what this computer business was about upstairs, and the black box, correct?" Officer Kennefick answered, "That's correct." In response to the next question, as to whether he thought these were telephone cloning devices, he said, "I was not exactly sure, no. I'm not a — I don't know anything about the stuff . . . ." Trooper Hogaboom, who, as noted above, arrived later at Kennefick's request and assisted in determining that the computer gear was, indeed, cloning equipment, did not testify at the motion hearing. As in any situation where evidence is seized without a warrant, the Commonwealth bears the burden of proving the police action was lawful. Officer Kennefick's testimony was insufficient as matter of law to establish that the cloning equipment seized by police had an "immediately apparent" incriminating character as required by plain view principles. On this ground alone, the defendant's motion to suppress, at least as to the telephone cloning equipment, should have been allowed.

The only other information before us on the items seized is contained in the return filed with the search warrant by Trooper Hogaboom. In that return Trooper Hogaboom stated that he "placed this Motorola cellular [tele]phone into a test mode," which revealed a mobile identification number that he knew through his training and experience to be a number belonging to a different type of cellular telephone, indicating that this was a "counterfeit cellular telephone." Passing over the question whether the Commonwealth can meet its burden of proving that a presumptively invalid warrantless search was lawful solely on the basis of an unsworn police report, we note that the above statement does not support the Commonwealth's case. As the motion judge correctly ruled, the fact that an officer may recognize the criminal nature of an object because of his or her

special expertise does not prevent a conclusion that the object's criminal nature was "immediately apparent." *United States* v. *Ewain,* 88 F.3d 689, 695 (9th Cir. 1996). Here, however, the officer had to test the cellular telephone to determine that it was "a counterfeit telephone"; this fact requires the conclusion that the object's incriminating nature was not immediately apparent. See *Stanley* v. *Georgia,* 394 U.S. 557, 569-572 (1969); *Arizona* v. *Hicks,* 480 U.S. 321, 325 (1986).

In the absence of testimony at the suppression hearing on the point, there is nothing to indicate whether the incriminating nature of the other equipment seized was immediately apparent or whether it only became apparent following the testing of the cellular telephone. The Commonwealth thus failed to meet its burden of showing that the warrantless seizure of the items was justified under the "plain view" doctrine.[9]

The "plain view" doctrine is intended primarily to permit police officers to seize contraband (i.e., objects, such as illegal drugs, that are unlawful to possess for any reason, see *Commonwealth* v. *Wojcik,* 358 Mass. 623, 628 [1971]), when encountered during the routine performance of their official duties. Indeed, where "mere evidence" of criminal activity is observed in plain view, it may be seized without a warrant only if "officers recognize it as plausibly related to *criminal activity of which they were already aware*" (emphasis supplied). *Commonwealth* v. *D'Amour,* 428 Mass. at 731, citing *Commonwealth* v. *Bond,* 375 Mass. 201, 206 (1978). Thus, if the cloning equipment here is characterized as "mere evidence" of criminal activity, it is necessarily beyond the reach of the plain view doctrine.[10] Even if not dubbed "mere evidence," however, the Commonwealth failed to prove at the motion hearing that the cloning equipment had any "immediately apparent" criminal

---

[9]It is also apparent that the third requirement under Federal law for justifying a warrantless seizure under the Fourth Amendment to the United States Constitution — that probable cause exist — also would not be met since probable cause to seize the equipment may only have arisen after the testing of the cellular telephone and the Commonwealth presented no evidence otherwise.

[10]The Commonwealth does not contend that police had any prior knowledge of the defendant's involvement in telephone cloning.

aspect rendering it subject to seizure under plain view principles.[11]

Needless to say, we are well aware of the fact that our analysis of these issues may seem somewhat "hypertechnical" in view of the defendant's obvious guilt. However, use of the concept of a protective sweep search and of the plain view doctrine can present a potentially far-reaching encroachment on the rights protected by art. 14 and the Fourth Amendment to the United States Constitution. This case graphically illustrates how police, by clever resort to these doctrines, can entirely circumvent the warrant requirement.

Police here entered the defendant's apartment to conduct a drug raid. Before long, expert searchers began combing through the defendant's apartment looking for evidence of an entirely different type of criminal activity without a warrant to guide or constrain them (as noted, the warrant here was obtained for and limited to searching for drugs). See *Commonwealth* v. *Guaba*, 417 Mass. at 753-755 (on the necessity of having a warrant where items sought are not contraband per se). This was a fundamental violation of the defendant's constitutional rights, and an altogether appropriate occasion for imposition of the exclusionary rule.

The motion judge's ruling on the defendant's motion to suppress the telephone cloning equipment was error.

2. *Evidence of defendant's prior drug-dealing activities.* The defendant claims "prosecutorial error" and ineffective assistance of counsel with respect to hearsay testimony elicited from Officer Coffey, depicting Coffey as having contacts with informants so that the jury would infer that the defendant was a drug dealer. Except in one instance, defense counsel lodged objections to this testimony. Because the prosecutor argued in his closing that the police were aware of the defendant's past drug-dealing, the defendant now argues that his confrontation rights were

---

[11]Despite the claims to the contrary in the concurring opinion, none of the cloning equipment seized here properly may be characterized as contraband. Under Massachusetts law, the items seized here are unlawful to possess only when coupled with an intent to use them for an unlawful purpose. The term "contraband" refers to items that are unlawful to possess irrespective of intent.

infringed and that counsel was ineffective for not objecting to this particular evidence. There was no reversible error in this regard. See *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 113-115 (1998) (reversing where hearsay both unnecessary and highly damaging).

The judge advised the jury during the examination of the police witnesses that evidence about what an individual told the witness about other unrelated drug sales could not be considered for the truth, but only "as a basis for what this witness did or what actions he took as a result of that information." Thus limited, the testimony was properly admitted under the rule that "policemen or other investigators may explain what they did in consequence of conversations with others." *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554 (1989). See *Commonwealth* v. *Cordle*, 404 Mass. 733, 743-744 (1989). In any event, as in *Commonwealth* v. *Fryar*, 425 Mass. 237, 251, cert. denied, 522 U.S. 1033 (1997), the jury "already knew that the defendant was charged with [drug trafficking]," so that the challenged testimony had but slight effect.

3. *Prosecutorial misconduct.* It was not unfair of the prosecutor to refer in closing argument to Coffey's having initiated the transaction by using the defendant's pager number obtained from a named informant. It was part of the Commonwealth's case to prove how the police knew it was the defendant who responded to the page. This evidence was elicited by the prosecutor after defense counsel had opened the issue, and its admission was not improper. A prosecutor may argue the evidence and its fair inferences. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516 & n.2 (1987); *Commonwealth* v. *Frank*, 433 Mass. 185, 196 (2001). As to the other remarks made in the prosecutor's closing, see *Commonwealth* v. *Walker*, 421 Mass. 90, 103-104 (1995); *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997); *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. at 647.

4. *Conclusion.* The defendant's suppression motion with respect to the cellular telephone and related cloning equipment should have been allowed. That portion of the judge's order that denies the motion to suppress the cellular telephone and telephone cloning equipment is reversed, and an order is to

enter suppressing the items listed in the return filed by Trooper Hogaboom. Accordingly, the judgments on the indictments charging telecommunications fraud, unlawful possession of telecommunications equipment, and larceny are reversed and the verdicts thereon are set aside. The other judgments are affirmed.

*So ordered.*

GREENBERG, J. (concurring in part and dissenting in part, with whom Gelinas, J., joins). In my view, the Motorola program box, the "copy cat" box, and the ESN and MIN combination lists, all contraband items found in plain view, were properly seized. Because the other items seized at the same time — the double "E" prong box, the computer equipment, and the cellular telephone found in the defendant's car — were not contraband items and should have been suppressed, I concur with the majority that the error in admitting these items requires reversal of the fraud, larceny, and unlawful possession of the communications equipment convictions. However, I disagree with the majority's conclusion that, on retrial, the contraband items may not be introduced in evidence. The three "contraband" items seized from the defendant's premises that relate to the unlawful cloning operation were properly seized and, with regard to these items, I would affirm the judge's denial of the defendant's suppression motion.

These items were seized during the course of the execution of a valid search warrant, a point conceded by the majority. The police here, unlike in *Commonwealth* v. *Lewin*, 407 Mass. 617, 623-627 (1990), and in *Commonwealth* v. *Nova*, 50 Mass. App. Ct. 633, 635-636 (2000), obtained prior to the search in question a valid warrant to enter the apartment based on probable cause to search for drugs, although not to search for evidence of the cloning operation. When Kennefick returned to execute the search warrant, the same items that had aroused his suspicions during the earlier sweep search remained, and Hogaboom, who accompanied him and had expertise that Kennefick lacked, confirmed without delay that these items were, in fact, utilized

in an unlawful cloning operation. See and compare *United States* v. *Ewain*, 88 F.3d 689, 695 (9th Cir. 1996) (that officer invited along, and not officer to whom warrant was issued, has expertise which makes immediately apparent criminal nature of objects in plain view, does not mean scope of warrant was exceeded). The majority states that this equipment was "mere evidence" of criminal activity and may only be seized without a warrant where "officers recognize it as plausibly related to criminal activity of which they already were aware." *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999), citing *Commonwealth* v. *Bond*, 375 Mass. 201, 206 (1978). They conclude, I submit erroneously, that there is no statute or common law rule forbidding the possession of such equipment. General Laws c. 166, § 42B (as amended through St. 1995, c. 272, § 2), makes unlawful the possession of, with the intent to use, instruments, equipment, or devices designed or adapted to fraudulently obtain telecommunication service. Further, prior to June 19, 1996, which was the date of the seizure of these items, the United States Congress, in 1994, amended 18 U.S.C. § 1029(a) by adding the Wireless Protection Act. See Pub. L. 103-414, § 206, 108 Stat. 429 (1994). Title 18 U.S.C. § 1029(a)(5), (6) (1994) made it unlawful to knowingly possess or control the type of hardware and software seized by the police in this case. Hogaboom's expertise enabled him to immediately recognize this equipment as illegal, or contraband. See *Commonwealth* v. *Ewain, supra.*

The police need not have come across the contraband items inadvertently, see *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448 (1980), and *Commonwealth* v. *D'Amour, supra*, and, at least with respect to those three "contraband" items, it was apparent that they bore a nexus to criminal activity. *Commonwealth* v. *Bond*, 375 Mass. at 207. *Commonwealth* v. *D'Amour, supra*. When items in plain view are seized but are not described in the warrant, the Commonwealth has the burden of showing at the hearing on the motion to suppress that, at the time of the seizure, it was apparent that the items bore a nexus to the crime. *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 304 (1979). I agree that seizure of the cellular telephone violated the tenets of the plain view doctrine described in *Arizona* v. *Hicks,*

40       53 Mass. App. Ct. 24 (2001)

Commonwealth *v.* Cruz.

480 U.S. 321, 325, 326-328 (1987). I further agree that the connection to criminal activity of the two other benign items, the "mere evidence" of criminal activity (the computer and the double "E" prong box), was not immediately apparent, as required by *Commonwealth* v. *Bond,* 375 Mass. at 206, and *Commonwealth* v. *Accaputo,* 380 Mass. at 447-448. However, the other items were contraband material, plausibly related to the unlawful cloning operation.

While Kennefick's testimony at the suppression hearing was indeed insufficient to satisfy the Commonwealth's burden, Hogaboom's report was properly before the motion judge, as it was attached to the warrant return submitted to the judge by the Commonwealth for the purposes of resolving the issues in the hearing. To disparage Kennefick because he was "not exactly sure" (about the contraband) and to reject Hogaboom's expertise which informed Kennefick's decision to seize the contraband items, merely because Hogaboom did not testify at the motion hearing, in my estimation, elevates form over substance.

In the final analysis, since the double "E" prong box, the computer equipment, and the cellular telephone should have been suppressed, I conclude that the error in admitting this evidence was not harmless beyond a reasonable doubt. See *Commonwealth* v. *Beauchamp,* 49 Mass. App. Ct. 591, 602 n.16 (2000). This evidence played a large role in demonstrating the existence, as well as the size, of the alleged cellular telephone cloning operation. These items were not " 'merely cumulative' of evidence properly before the jury," *Commonwealth* v. *Sinnott,* 399 Mass. 863, 872 n.8 (1987), and the cellular telephone found in the defendant's car assisted the Commonwealth in connecting the defendant to the alleged illegal cloning operation. Without this evidence, it would have been much more difficult to convict the defendant of the cellular telephone cloning counts as well as of the counts charging possession of illegal cloning equipment, larceny, and unlawful possession of communications equipment. Hence, the "error had, or might have had, an effect on the jury and . . . contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot,* 407 Mass. 539, 549 (1990).