COMMONWEALTH vs. JAMES M. KING
(and nine companion cases[1]).

No. 05-P-1116.

Suffolk. June 16, 2006. - December 15, 2006.

Present: LAURENCE, GELINAS, & COHEN, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Probable cause, Plain view. *Probable Cause. Constitutional Law,* Probable cause.

This court affirmed an order allowing a criminal defendant's motion to suppress evidence, where the incomplete record on appeal did not support the conclusion that the search fell within the plain view exception to the warrant requirement. [825-831]

COMPLAINTS received and sworn to in the South Boston Division of the Boston Municipal Court Department, seven on May 7, 2004, and three on June 7, 2004, respectively.

Pretrial motions to suppress evidence were heard by *Michael J. Coyne, J.*

An application for leave to prosecute an interlocutory appeal was allowed by *Martha B. Sosman, J.,* in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Timothy M. Pomarole,* Assistant District Attorney, for the Commonwealth.

*Daniel F. de Abreu* for Louis E. Chighisola.

*Brad P. Bennion* for James M. King.

LAURENCE, J. Charged principally with possession with intent to distribute various controlled substances within a school zone, the three defendants moved to suppress the drugs and drug

---

[1]Two against James M. King, three against Marc Coriaty, and four against Louis E. Chighisola.

paraphernalia discovered by State troopers after stopping the defendants' motor vehicle for a lane change violation. The Commonwealth appeals[2] from a decision of a judge of the South Boston Division of the Boston Municipal Court Department allowing the defendants' motions, on the ground that the police lacked probable cause to effect the warrantless search and seizure that uncovered the inculpatory materials. The Commonwealth asserts that the motion judge erred because probable cause to search existed following police observation of "a piece of green, leafy vegetable matter" on the driver's seat. We agree, however, with the judge that the Commonwealth produced no credible evidence at the suppression hearing demonstrating probable cause to search, as was its burden under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

*Background.* The facts as found by the motion judge — none of which is challenged as clearly erroneous by the Commonwealth — are as follows.[3] At approximately 2 P.M. on May 6, 2004, State Trooper Robert Coletti (who was the only Commonwealth witness to testify at the suppression hearing) stopped a motor vehicle occupied by the defendants — James King, Louis Chighisola, and Marc Coriaty — for making a lane change without a proper turn signal on Old Colony Avenue in the South Boston section of Boston. Upon questioning the defendants and running routine computer queries on their names, Coletti discovered that King was the subject of an outstanding arrest warrant and that Chighisola, the driver of the car, had a suspended driver's license.

After Coletti radioed for assistance, several more State troopers arrived on the scene. Coletti placed King in custody in the

---

[2]Pursuant to leave of a single justice of the Supreme Judicial Court under G. L. c. 278, § 28E, and Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

[3]For reasons that are unclear, the Commonwealth did not provide us with a complete transcript of the suppression proceedings from which it appeals. Since the Commonwealth does not argue that the motion judge committed clear error in making his factual findings, and since it is impossible for us to determine the existence of clear error on such an incomplete record, we accept the factual findings of the motion judge in their entirety. See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

back seat of his cruiser. Since Chighisola's driver's license was suspended, Coletti ordered him to exit the vehicle and conducted a patfrisk, which revealed nothing.[4] One of the other State troopers on the scene, Kevin Young, then called Coletti's attention to "a piece of green, leafy vegetable matter" on the driver's seat. Coletti did not himself observe the "green, leafy vegetable matter" directly.[5]

As a result of his being told of the substance on the seat, Coletti removed Coriaty from the vehicle and conducted a search of the passenger compartment, during which he discovered a hidden compartment in the center console. In the ensuing search, the troopers found and seized Oxycontin pills, as well as other illegal drugs and drug paraphernalia. All of the defendants were subsequently placed under arrest. Each defendant was later charged for the crimes of possession with intent to distribute a class B controlled substance, G. L. c. 94C, § 32A(*b*); possession of a class D controlled substance, G. L. c. 94C, § 34; and possession of controlled substances within 1,000 feet of a school, G. L. c. 94C, § 32J. Chighisola was also charged with operating a motor vehicle with a suspended license, G. L. c. 90, § 23.[6]

*Discussion.* In reviewing the allowance of a motion to sup-

---

[4]No challenges to Coletti's conduct with respect to King and Chighisola up to this point were made at the suppression hearing or are advanced on appeal.

[5]Although Coletti testified at the suppression hearing that he saw the green, leafy vegetable matter and believed it to be marijuana, the motion judge explicitly discredited his testimony on that point. The judge found that "another Trooper at the scene of the motor vehicle stop saw the particle on the front seat and communicated his observation to Trooper Coletti." "On a motion to suppress, '[t]he determination of the weight and credibility of the testimony is the function and responsibility of the [motion] judge who saw the witnesses, and not this court.' " *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), quoting from *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980).

[6]Soon after it obtained leave to file an interlocutory appeal from the judge's suppression order, the Commonwealth sought and received a stay of the appellate proceedings in this court so that it might move to amend the judge's written findings of fact pursuant to Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979). The Commonwealth argued that the judge's findings were inconsistent with Coletti's testimony at the suppression hearing that he had seen the "green, leafy vegetable matter" in the defendants' car and believed it to be marijuana. The judge, however, denied the motion to amend findings and made it clear that he did not credit that portion of Coletti's testimony,

press, we accept the motion judge's "subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). Those conclusions of law, while subjected to independent review, are still "view[ed] with particular respect." *Commonwealth* v. *Cast*, 407 Mass. 891, 897 (1990), citing *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985).

It is well-established that warrantless searches, such as the one at issue here, are presumptively unreasonable under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[7] See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 454-455 (1971) (*Coolidge*); *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). The evidence obtained as a result of a warrantless search is presumed to be inadmissible, unless the Commonwealth meets its burden of proving that the "particular search falls within a narrow class of permissible exceptions." *Ibid.*

The Commonwealth essentially contends that the instant search was justified under the "plain view" exception to the warrant requirement. That exception "permits police to seize property not described in a warrant provided (1) the officers are lawfully in the place where the seized items are observed, and (2) the 'incriminating character [of the object seized] is *immediately apparent*' (emphasis supplied), and (3) the officers have a lawful right of access to the object." *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 24, 33 (2001), quoting from *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995). See *Coolidge, supra* at 466-468. Under art. 14 of the Massachusetts Declaration of Rights, it is also required that the police come across the incriminating item inadvertently in order for the plain

see note 5, *supra*, whereupon the Commonwealth resumed its appeal.

[7]Although, in certain circumstances, art. 14 provides greater substantive protection to defendants than does the Fourth Amendment, this case does not "come within th[at] special category where art. 14 and Fourth Amendment law diverge." See *Commonwealth* v. *Cast*, 407 Mass. at 907. But see note 8, *infra*.

view exception to apply.[8] See *Commonwealth* v. *Balicki,* 436 Mass. 1, 9-10 (2002).

Notwithstanding the lack of any testimony from Trooper Young,[9] the Commonwealth argues that the search in the present case falls within the plain view exception as defined in *Commonwealth* v. *Cruz, supra.* It asserts that the police properly stopped the motor vehicle after observing a traffic violation, see *Commonwealth* v. *Santana, supra* at 207, and properly ordered King and Chighisola out of the vehicle based on Trooper Coletti's reasonable belief that "criminal behavior in addition to the traffic violation was afoot."[10] *Commonwealth* v. *Torres,* 433 Mass. 669, 674 (2001). Therefore, the Commonwealth contends, the search met the first criterion of *Commonwealth* v. *Cruz, supra,* that the police officers were "lawfully in the place where the seized items [were] observed."[11] We are not persuaded by what is a conclusory and speculative argument. The judge's findings of fact do not indicate whether Young observed the "green, leafy vegetable matter" from a vantage point outside the vehicle, or whether he had entered the vehicle before discovering that substance. The Commonwealth asserts that "[b]y all indications, the substance was seen from outside the automobile. Thus, police were in a lawful position to see it." The Commonwealth cannot, however, support this conclusion on the record presented to us.[12]

The Commonwealth nonetheless posits that the search was

---

[8]The Federal courts no longer impose the requirement of inadvertence under the Fourth Amendment. Compare *Coolidge, supra* at 469, with *Horton* v. *California,* 496 U.S. 128, 130 (1990).

[9]The complete hearing transcript is likewise absent.

[10]As mentioned above, there was an outstanding warrant for King's arrest, and Chighisola was operating the vehicle with a suspended driver's license.

[11]The search following the observation of the "green, leafy vegetable matter" appears to satisfy the requirement of inadvertence under Massachusetts search and seizure law, although it fails to meet the other prongs of the plain view doctrine. The Supreme Judicial Court has "described the inadvertence element of the plain view doctrine as requiring 'that police lack[] probable cause before entering the [defendant's private space] to believe the items would be there.'" *Commonwealth* v. *D'Amour,* 428 Mass. 725, 732 (1999), quoting from *Commonwealth* v. *Cefalo,* 381 Mass. 319, 331 (1980). Prior to Trooper Young's observation of the vegetable matter, there was no indication that the defendants were involved in drug-related activities.

[12]While the judge did not specifically find that the police violated the

justified under the plain view exception on the ground that the
police had a lawful right of access to the green, leafy vegetable
matter[13] because its incriminating character was immediately
apparent.[14] That assertion also finds no basis in the record before

defendants' privacy rights in observing the vegetable matter on the driver's
seat, he did not explicitly indicate otherwise. In the findings of fact, there is
no mention of Trooper Young's position, whether inside or out of the vehicle,
at the time he observed the substance on the driver's seat. On the record
presented to us, there was no valid reason for any police intrusion into the
vehicle. See *Commonwealth* v. *Gonsalves*, 46 Mass. App. Ct. 186, 189-190
(search of vehicle stopped for suspected drunk driving was invalid when no
articulable grounds to search existed), *S.C.*, 429 Mass. 658 (1999). Contrast
*Commonwealth* v. *Brillante*, 399 Mass. 152, 153-154 (1987) (interior search
of vehicle valid where permissible patfrisk of apparent driver uncovered a
package of cocaine); *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 686,
688-689 (1984) (vehicle search valid where police observed hand-rolled
"marijuana cigarette" on console between front seats through the vehicle
window as they stood outside in a public parking lot); *Commonwealth* v. *San-
tiago*, 53 Mass. App. Ct. 567, 571 (2002) (interior search of vehicle valid
where driver and vehicle matched descriptions arising from recent attacks in
the area by an armed individual); *Commonwealth* v. *Vesna San*, 63 Mass. App.
Ct. 189, 193-194 (2005) (police may enter interior of stopped vehicle if they
have any reasonable apprehension of risk to their safety from possible weapons
within).

[13]The United States Supreme Court has explained that the requirement that
the police have a lawful right of access to the object seized "is simply a
corollary of the familiar principle . . . that no amount of probable cause can
justify a warrantless search or seizure absent 'exigent circumstances.' "
*Coolidge*, 403 U.S. at 468. Under circumstances similar to the case at hand,
the requirement of exigent circumstances may be satisfied under the so-called
"automobile exception," which provides that "no more exigent circumstances
are required by art. 14 [or the Fourth Amendment] beyond the inherent mobil-
ity of an automobile itself to justify a warrantless search of the vehicle." *Com-
monwealth* v. *Motta*, 424 Mass. 117, 124 (1997). Thus, "[a]n officer seeing
contraband items, or what reasonably may be thought contraband items,
through the window may legitimately seize them." *Commonwealth* v. *Skea*, 18
Mass. App. Ct. at 688. Here, however, due to the Commonwealth's failure to
offer testimony by Trooper Young, it was not established that *he* (or, indeed,
any of the troopers other than the discredited Coletti) reasonably believed the
vegetable matter to be contraband.

[14]Post-*Coolidge* United States Supreme Court cases have made it clear that
"the use of the phrase 'immediately apparent' was very likely an unhappy
choice of words, since it can be taken to imply that an unduly high degree of
certainty as to the incriminatory character of evidence is necessary for an ap-
plication of the 'plain view' doctrine." *Texas* v. *Brown*, 460 U.S. 730, 741
(1983). Rather, the need for the incriminatory character of the seized evidence
to be "immediately apparent" has come to be understood as requiring that the
police had probable cause to believe that the items observed were contraband

us.[15] Under the facts as found by the motion judge, Trooper Young was the only officer on the scene to have observed the "green, leafy vegetable matter" on the driver's seat of the defendants' automobile. As previously noted, Young was not called as a witness at the suppression hearing. Consequently, no testimony was presented regarding whether he reasonably believed — on the basis of his training and experience — that the vegetable matter was marijuana; as also noted, Coletti's testimony on this point was expressly disbelieved by the judge. The Commonwealth additionally failed to offer any details about the size or shape of the since-vanished "vegetable matter," nor did it suggest that the substance was in any way suspiciously packaged, covered, or enclosed (for example, in a plastic bag).[16]

We cannot now assume that an undescribed particle of unknown green vegetable matter — that, for all we can glean from the record, might have been a remnant of lettuce from a sandwich — can be equated to illegal contraband without competent supporting evidence not contained in this record. Contrast *Commonwealth* v. *Miller*, 366 Mass. 387, 387-389 (1974) (probable cause to search vehicle created when experienced officer observed a "green substance" that he believed to be marijuana in a plastic baggie protruding from the defendant's pocket). Compare *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 650 (1993) (plain view observation of

---

or the instrumentalities of a crime. *Id.* at 741-742. See *Warden* v. *Hayden*, 387 U.S. 294, 306-307 (1967); *Commonwealth* v. *Bond*, 375 Mass. 201, 206-207 (1978). Both the United States Supreme Court and the Massachusetts courts have recognized that "probable cause is a flexible, common sense standard," which merely requires "that the facts available to the officer 'would warrant a man of reasonable caution in the belief,'. . . that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false." *Texas* v. *Brown, supra* at 742. See *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 650 (1993). The fundamental defect in the Commonwealth's case, on the record before us, is that no credible testimony was presented that could satisfy even the "flexible" requisite standard.

[15]Since the Commonwealth's claim fails on this issue, we need not further discuss the police's lawful right of access.

[16]The vegetable matter was apparently no longer available as evidence at the suppression hearing, and the record is silent as to its disposition after the defendants' arrests.

empty plastic baggie on rear floor of vehicle did not provide probable cause to search interior). See also cases cited in note 12, *supra.*

The Commonwealth invokes the "collective knowledge" doctrine, or "fellow officer" doctrine, pursuant to which the knowledge of one officer is imputed to others, see *Richardson* v. *Boston,* 53 Mass. App. Ct. 201, 206 (2001), in an effort to establish that Trooper Young's observation as communicated to Trooper Coletti was sufficient to justify the search.[17] The Commonwealth's reliance on that doctrine is misplaced. The collective knowledge principle does not extend to allowing an officer to offer hearsay testimony as to what another, nontestifying officer allegedly observed, nor does it permit the Commonwealth to evade its burden of showing that the warrantless search was supported by probable cause. On the limited record presented to us, we have no way of determining how Young discovered the substance, where he was at the time, what he believed it to be, or whether his belief could be deemed reasonable. Nor do we know exactly what he said upon drawing Coletti's attention to the substance.[18] In short, given the incomplete record, there are too many unanswered questions for us to conclude that the police had probable cause to search the defendants' automobile.

---

[17]Defendant King, in his brief, contended that any hearsay statements made by Trooper Young to Trooper Coletti regarding Young's observation of the marijuana on the front seat were barred by the United States Supreme Court's decision in *Crawford* v. *Washington,* 541 U.S. 36 (2004) (holding that out-of-court statements by witnesses that are "testimonial" are barred, under the Sixth Amendment's confrontation clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses). We need not consider this argument, for the reason, if no other, that the Commonwealth did not provide us with the actual statements made by Young to Coletti. Furthermore, the judge had no need to factor *Crawford* v. *Washington, supra,* into his decision, since the Commonwealth failed to meet its burden of proving probable cause to search the vehicle.

[18]The exact wording that Trooper Young used to alert Trooper Coletti would be significant and could have resolved this case had the Commonwealth called Young as a witness to testify that he distinctly said something to the effect of, "There is a particle of what I believe to be marijuana on the front seat." However, we do not know whether Young had a confident belief that the substance was marijuana, or whether any such belief would have been reasonable based on his training and experience as a police officer.

Therefore, we affirm the motion judge's order allowing the defendants' motions to suppress.

*So ordered.*