## COMMONWEALTH *vs.* ROGER JEAN-CHARLES.

Middlesex.   September 10, 1986. — December 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Probable Cause. Search and Seizure,* Physician's office, Affidavit, Probable cause. *Constitutional Law,* Search and seizure, Probable cause.

An affidavit submitted in support of an application for a search warrant was not sufficient to establish probable cause for the issuance of a warrant to search a physician's office for certain specific medical records and appointment books where the judge considering the application could not have reasonably inferred from the facts recited that the doctor had any knowledge of or involvement in an alleged fraudulent insurance claim scheme. [757-759]

An affidavit submitted in support of an application for a search warrant was not sufficient to establish probable cause for the issuance of a warrant to search a physician's office for certain specific medical records and appointment books where the judge considering the application could not have concluded on the basis of the facts recited that information in the documents sought would have incriminated two of the physician's former patients in an alleged fraudulent insurance claim scheme. [759-760]

INDICTMENTS found and returned in the Superior Court Department on June 27, 1985.

A pretrial motion to suppress evidence was heard by *James J. Nixon,* J.

An application for an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Liacos,* J., and the appeal was reported by him to the full court.

*Max D. Stern* (*Patricia Garin* with him) for the defendant.

*Joseph P. Musacchio,* Assistant District Attorney, for the Commonwealth.

*Carol A. Donovan, Marjorie Heins & John Reinstein* for Massachusetts Association of Criminal Defense Lawyers & others, amici curiae, submitted a brief.

LIACOS, J. This is an interlocutory appeal, authorized by a single justice of this court (Mass. R. Crim. P. 15 [b] [2], 378 Mass. 882 [1979]), from an order denying Roger Jean-Charles's amended motion to suppress evidence seized pursuant to a warrant to search his office. Jean-Charles, a Boston physician, was indicted in Middlesex County on June 27, 1985, on four indictments charging attempted larceny and insurance fraud.[1] G. L. c. 277, § 30 (1984 ed.). G. L. c. 266, § 111B (1984 ed.). The charges relate to a $3,610 bill for services rendered to a patient for injuries she attributed to an automobile accident. The Commonwealth alleges that the bill was inflated to recover $2,700 in insurance company payments for services which had never been performed. Jean-Charles moved to suppress the evidence on the ground that the affidavit supporting the warrant did not establish probable cause under the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, §§ 1, 2, 2B (1984 ed.).[2] During a hearing on November 12, 1985, the motion judge ordered that the amended motion to suppress should be denied. We reverse.

---

[1] Indictment 85-1870 charges the defendant with knowingly presenting to the Safety Insurance Company a false or fraudulent statement for medical services rendered to his patient, Marie Raphael. Indictment 85-1872 charges attempted larceny in connection with the same statement. Indictment 85-1871 charges the defendant with knowingly presenting to the Commercial Union Insurance Company a false and fraudulent statement for medical services rendered to the same patient. Indictment 85-1869 charges attempted larceny in connection with the same statement.

[2] Specifically, Jean-Charles claims that the affidavit failed to set forth sufficient facts to enable a magistrate to believe that any crime was committed or that the fruits, instrumentalities, or evidence of any crime would be found in his office.

The facts are as follows. On November 24, 1984, Marie Raphael, a long-standing patient[3] of Jean-Charles, consulted him for injuries she attributed to a November 19 automobile accident.[4] The day after the alleged accident, Raphael was treated for neck and back injuries at Carney Hospital in Boston. She received an "aftercare" instruction sheet which directed her to see her personal physician for follow-up care. Claiming that she had followed the hospital's instructions without improvement in her condition, Raphael came to Jean-Charles for evaluation and treatment. Jean-Charles conducted a physical examination, administered various tests, and made a diagnosis.[5] Thereafter, Jean-Charles prescribed ultrasound therapy to be administered by medical assistants in his office. On May 4, 1985, Jean-Charles billed Raphael for seven office visits, various tests, and twenty-seven ultrasound treatments. Jean-Charles submitted the bill, together with a report on Raphael's treatment, to the Safety Insurance Company, pursuant to the

---

[3] In a report on Raphael's medical condition, Jean-Charles wrote, "Mrs. Raphael is well known to me because I treated her back in 1983 for an infection of her hand. I also treated her in 1983 for a viral pneumonia." This report, dated April 25, 1985, was attached to the affidavit in support of the warrant and incorporated therein.

[4] In the same April, 1985, report, Jean-Charles wrote: "This 32-year-old female presented to this office on November 24, 1984 alleging: 1. Back pain. 2. Shoulder pain. 3. Neck pain. She blamed these symptoms on a motor vehicle accident which took place on October 19, 1984. Allegedly she was riding in the back seat as a passenger in a vehicle driven by her friend. . . . She claimed that on impact she was projected in multiple directions and injured her back and also her neck."

[5] In an affidavit in support of his motion to dismiss, Jean-Charles stated: "My physical examination revealed objective findings of spasm of the neck and lower back muscles and limitation of movements. Ms. Raphael was three months pregnant. No x-rays, therefore, were obtained. With the help of the tests and my physical examination, I arrived at the diagnosis of sprain of the cervical spine and sprain of the lower back, and pregnancy." Essentially, the same assessment was included in the April 25, 1985, report submitted to the insurance companies.

company's request and Raphael's authorization.[6] An attorney for Raphael submitted a bill to the Commercial Union Insurance Company (Commercial Union).

The Commonwealth's primary evidence against Jean-Charles consists of his 1984-1985 appointment books and the medical files of Raphael and her son, Romane Eugene, "from November 1984 to the present." All were seized from his office on June 13, 1985, pursuant to a warrant issued by a Superior Court judge. The warrant application was based on the affidavit of a State police trooper, Joseph F. Flaherty. On the basis of information indicating that claims had been made to two insurance companies for the same accident, with one claim citing a November 18, 1984, accident and the other claim reporting a November 19, 1984, accident, the trooper concluded that "it is likely that the second accident never occurred."[7] Therefore, he concluded that "it is likely that neither Marie Raphael nor Eugene Romane [*sic*] was ever injured and in need of medical treatment."[8]

---

[6] Jean-Charles was required to keep records of his treatment of Raphael and her son, Romane Eugene, and to release those records to third parties on request of the patient. 243 Code Mass. Regs. § 2.07 (13) (1985).

[7] The affidavit relied on records from two insurance companies which indicated that on January 23, 1985, Raphael and Eugene had filed personal injury claims with Commercial Union for injuries received in a November 19, 1984, accident. The claims were made against a policy issued to one Marie Enayo. On November 23, 1984, Enayo had filed a property damage claim with the same company for the November 19 accident. Enayo had reported that Raphael and Eugene were passengers in her parked vehicle and that they were injured when her vehicle was struck by another automobile. Enayo had also made a separate claim for the same property damage to the Fireman's Fund Insurance Company. This claim indicated that Enayo's automobile had been hit on November 18 by an individual insured by that company. Trooper Flaherty compared the photographs taken to appraise the property damage for each claim and concluded that the damage was identical.

[8] The affidavit also recited that there were discrepancies with respect to the registration of Enayo's vehicle. The November 18 accident claim listed a registration number (866-IVG) which apparently had never been issued by the Registry of Motor Vehicles. The November 19 accident claim listed a different number (800-IVG) belonging to a Braintree resident, not to Enayo. We note that a picture of the automobile, attached to the affidavit, shows that it bears a registration number 866-IVG.

With respect to Jean-Charles's potential involvement in a scheme to defraud the insurance companies, the affidavit stated that the claims listed Jean-Charles as Raphael's and Eugene's physician; that the bill and medical report were submitted to Commercial Union; and that Trooper Flaherty made an appointment with Jean-Charles under an assumed name and observed the receptionist using a black appointment book.

At the hearing on the amended motion to suppress, the Commonwealth argued that the warrant application, affidavit and exhibits "do provide probable cause and a reasonable basis to conclude that the November 19 accident never occurred, do provide probable cause and reasonable basis to believe that Marie Raphael and Eugene Romane [*sic*] were never, in fact, injured, and, therefore, do provide probable cause and reasonable basis to believe that they were not, in fact, treated as they allege in their application for personal-injury-protection benefits, as Jean-Charles indicated in his bills to the Commercial Union Insurance Company, calling for payment of some $3,600 or for 34 individual days of treatment."

The judge ruled: "My task is not to determine anything beyond the question of the sufficiency of the affidavit to establish probable cause to search the office of the defendant with specificity as to the items that were sought. I have read the affidavit, and I find that the issuing magistrate who issued the search warrant initially had sufficient probable cause to issue such a warrant. It was a restricted warrant in that it didn't provide solely for a general search, but, rather, provided for a search of specific records. And I presume, from what I have heard, that that is all that was taken from the office. So, the amended motion to suppress is denied."

The parties disagree as to whether the affidavit in support of the warrant to search Jean-Charles's office established probable cause to believe that the November 19 accident did not occur. For purposes of this decision, we pass, without ruling on, whether there was probable cause to believe that Enayo's claim that an accident occurred on November 19 was fraudulent. Even if we assume that there was probable cause to believe that the accident never occurred, and that Raphael,

Eugene, and Enayo were engaged in attempted insurance fraud, the affidavit still must demonstrate probable cause to believe that evidence of the crime will be found in the place to be searched. *Commonwealth* v. *Upton,* 394 Mass. 363, 370 (1985). *Commonwealth* v. *Cefalo,* 381 Mass. 319, 328 (1980). There must be a nexus between these articles and the crime. *Id.* at 330. See *Warden, Md. Penitentiary,* v. *Hayden,* 387 U.S. 294, 307 (1967). In appraising whether probable cause existed, we consider only the information revealed in the affidavit submitted to the issuing magistrate. *Commonwealth* v. *Upton, supra* at 367; *Commonwealth* v. *Cefalo, supra* at 328.

The parties disagree as to whether the "crime" under investigation involved Jean-Charles as an active participant or as an unwitting third party whose records might contain information which would aid in the apprehension or conviction of his patients. In our view, the affidavit does not reveal probable cause to search the office of Jean-Charles under either theory. The standard of probable cause, applicable under either theory, is "whether [the magistrate] has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. . . . Strong reason to suspect is not adequate." (Citations omitted.) *Commonwealth* v. *Upton, supra* at 370. "An affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues. *Commonwealth* v. *Cefalo,* 381 Mass. 319, 328-329 (1980). Information establishing that a person is guilty of a crime does not necessarily constitute probable cause to search the person's [office]." *Commonwealth* v. *Cinelli,* 389 Mass. 197, 213 (1983).

If the Commonwealth's theory was that Jean-Charles was involved in a criminal scheme to defraud insurance companies,[9]

---

[9] This reasoning appears to underlie the conclusion reached by Trooper Flaherty, who stated that "there is probable cause for believing that certain property is intended for use or has been used as the means of committing a crime — certain property has been concealed to prevent a crime from being discovered."

the Commonwealth's only asserted basis for believing that incriminating evidence would be discovered in Jean-Charles's records was the fact that he had presented a bill for treatment of injuries which, arguably, Raphael had never suffered. The Commonwealth's reasoning took the following form: (1) The accident never occurred; (2) therefore, the patients were not injured and needed no medical treatment; (3) therefore, it was likely that no medical treatment was rendered and that Jean-Charles's bill for services rendered was fraudulent; and (4) Jean-Charles's records would probably indicate that he had not performed the unneeded services.

There are several problems with this analysis. First, even if there were probable cause to believe that the November 19 accident never occurred, that would only establish probable cause to believe that any medical problems which Raphael or Eugene described to Jean-Charles were not caused by that accident. Raphael could have needed ultrasound treatments for an injured neck and back even if she had never seen Enayo or her automobile.

Further, even if we assume that Raphael did not need medical treatment, it does not follow that she did not receive it, or that the defendant did not believe that she needed treatment. Probable cause to believe that a patient does not need medical treatment does not establish probable cause to believe that her physician knows that she does not need such treatment. Even if Jean-Charles's diagnosis of Raphael's condition was incorrect, that does not mean that it was not arrived at in good faith on the basis of her statements and his examination. An incorrect diagnosis, without more, does not establish probable cause to believe that a physician is complicit in, or aware of, a patient's fraud. An incorrect diagnosis could constitute probable cause only if a doctor were required to corroborate independently the patient's history of a reported injury before diagnosing and treating symptoms reported by the patient. We are aware of no such requirement, nor does the Commonwealth cite any authority in medicine or law to this effect.

As this court noted in *Commonwealth* v. *Germain,* 396 Mass. 413, 415 n.4 (1985), "[w]here a warrant is used, the judge may

consider only the affidavit or affidavits presented to the magistrate." It cannot reasonably be inferred from the affidavit before the issuing judge that Jean-Charles knew of, or had any involvement in, a fraudulent accident scheme. There was no basis for an inference that he had any connection with any party to the scheme other than the relationship with Raphael and Eugene as their treating physician. There is nothing in the affidavit warranting an inference that Jean-Charles's April 25, 1985, report which described his findings and treatment was anything other than what it appeared to be — an objective summary of his patient's condition and treatment. The records annexed to the affidavit reflect that Marie Raphael was seeking treatment five days after she claimed to have been in an automobile accident, and that she had gone to Carney Hospital for treatment shortly after the accident. The time frame is consistent in common experience with the behavior of persons suffering injuries in an automobile accident. Furthermore, the patient reported neck and back pain, injuries known in common experience to result from automobile accidents, and known also to be difficult to diagnose and treat.[10]

Alternatively, the Commonwealth argues that the police lawfully could search Jean-Charles's office for evidence of a crime even if Jean-Charles was not reasonably suspected of criminal involvement. See *Zurcher* v. *Stanford Daily,* 436 U.S. 547, 559-560 (1978). Even if Trooper Flaherty's affidavit and application sought a "third party warrant," the affidavit would still need to establish probable cause to believe that the documents sought would "aid in a particular apprehension or conviction." *Commonwealth* v. *Murray,* 359 Mass. 541, 547 (1971). *War-*

---

[10] Amici curiae, Massachusetts Association of Criminal Defense Lawyers, Civil Liberties Union of Massachusetts, and New England Medical Society, submitted a brief before this court which noted that "[o]n making a determination of probable cause, the judicial officer must rely upon 'common knowledge' and take account of 'facts with which almost everyone is familiar.' *Commonwealth* v. *Moran,* 353 Mass. 166, 170 (1967)." Amici also submitted "that it is common knowledge that the source of back and neck pain is difficult to discover, and is sometimes never discovered" and "that it is common knowledge that back and neck pain can persist over a long period of time, and is frequently debilitating."

*den, Md. Penitentiary,* v. *Hayden, supra* at 307. It must be "satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises." *Zurcher* v. *Stanford Daily, supra* at 559. In this case, there was no reason to believe that Jean-Charles's records and appointment book would have indicated that the patients reported to Jean-Charles anything other than the information reported to the insurance company and to the staff at Carney Hospital. The affidavit established no reason to believe that the records contained anything inconsistent with the medical history, findings, and treatment described in Jean-Charles's medical report. Consequently, there was no probable cause to believe that the documents to be seized from Jean-Charles's office would contain any evidence to incriminate Raphael or Eugene.[11]

Regardless whether the crime under investigation was Jean-Charles's or that of his patients, the affidavit failed to establish probable cause to believe that evidence of either crime would be found in the office of Jean-Charles. Accordingly, the amended motion to suppress should have been granted.

*Order reversed.*

---

[11] Accordingly, we do not reach the question whether this case would be governed, as matter of Federal law, by *Zurcher* v. *Stanford Daily, supra.* We express no view at this time as to whether we would follow *Zurcher* under State law.