COMMONWEALTH *vs.* LUCIUS REDD (and a companion case[1]). No. 99-P-578. September 25, 2000. *Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry.

The Commonwealth appeals from an order issued by a judge of the District Court allowing the defendants' motion to suppress evidence gathered as a result of a stop by the police of the taxicab in which the defendants were passengers. We vacate the order, and remand for further proceedings.[2]

The evidence, as found by the motion judge, and as supplemented by the uncontroverted testimony of Detective James Goldrick, the sole witness at the hearing on the motion, consisted of the following.[3] On February 17, 1998, Detective Goldrick and his partner, Detective Pedro Cruz, both of the Springfield police department, were on patrol when they heard a radio dispatch stating that a silver Chevrolet vehicle with the license number 604 EHA had been stolen from the Shriner's Hospital. The dispatch further stated that the theft of the vehicle had been reported by a construction worker at the hospital

---

[1]Commonwealth *vs.* Jamal Jackson.

[2]The defendants were charged with carrying a firearm without a license and possession of ammunition without a firearm identification card.

[3]We pause to emphasize that, while we consider minor details of testimony to which the motion judge did not specifically allude, we do not engage in appellate fact finding. See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 312 (1992). The motion judge did not state that he found any aspect of Detective Goldrick's testimony to be not credible. See *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 (1996). Further, we in no way contradict the motion judge's findings. We "merely fill out the narrative," *Commonwealth* v. *Butler*, 423 Mass. 517, 526 n.10 (1996), which is necessary in light of the abbreviated findings of the judge. See *Commonwealth* v. *Willis*, 415 Mass. 814, 816-817 (1993).

and that he reported that the vehicle had been stolen by a Hispanic male in his twenties wearing a white bandana, blue jeans, and a jacket.[4]

At the time of the broadcast, Goldrick and Cruz were in the vicinity of the hospital. While they were trying to locate the stolen vehicle and less than ten minutes after hearing the dispatch, they were apprised by radio that the stolen vehicle had been abandoned approximately two blocks from the hospital, and subsequently had been located by other police officers.[5] On the same street and a short distance from where the stolen vehicle had been abandoned, the detectives noticed two dark skinned males who appeared to be in their mid to late twenties, one of whom was wearing a white bandana, walk for a short distance and then get into a taxicab. Detective Goldrick believed the individual wearing the bandana was also wearing blue jeans, but could not be sure. About ten to twenty minutes had elapsed from the time the detectives received the radio dispatch to when they saw the defendants walking along the street. The detectives decided to follow the taxicab, and while they did so, Goldrick noticed the two males look back at the detectives three or four times through the taxicab's rear window, and make movements as if they were putting something on the floor. At this time, the detectives activated their lights, signaling the taxicab to pull over.

The detectives inquired of the defendants where they were coming from, at which time Detective Cruz noticed loose ammunition on the floor. The detectives ordered the defendants to step out of the vehicle, and placed them in handcuffs for safety purposes. Detective Cruz inspected the rear seat area of the taxicab, and found thirty-one bullets and a pistol. The detectives then placed the defendants under arrest.

We first address a contention that the motion judge apparently deemed significant — that the officers had decided to stop the defendants at the time they were first observed walking down the street. This finding is without consequence. It is well settled that a seizure, for purposes of art. 14 of the Massachusetts Declaration of Rights, takes place if, in the circumstances, "a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Stoute*, 422 Mass. 782, 786 (1996), quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985). Therefore, whatever the detectives' subjective intent may have been, the fact remains that, until the detectives activated their lights, the passengers inside the taxicab continued on their way, and it cannot reasonably be said that they did not feel free to leave. See *Commonwealth* v. *Groves*, 25 Mass. App. Ct. 933, 935 & n.2 (1987). Rather, the seizure occurred when the detectives activated their lights, signaling the taxicab to stop. "A police officer may stop a vehicle in order to conduct a threshold inquiry if he has a reasonable suspicion that the occupants have committed, are committing, or are about to commit, a crime. His suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. A hunch will not suffice." *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990), quoting from *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984).

---

[4]Although police went to the hospital, the construction worker was not found or identified.

[5]Detective Goldrick testified also .that while he received information stating that the car had been located by uniformed officers, he personally saw the car, albeit from down the street. Because the car was being attended to by other officers, Goldrick did not approach the stolen vehicle.

If, as here, "the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. Independent police corroboration may make up for deficiencies in one or both of these factors. Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). It reasonably may be concluded that here the informant's basis of knowledge was that he or she had witnessed a vehicle being stolen. Cf. *Commonwealth* v. *Anderson*, 366 Mass. 394, 398-399 (1974). The more crucial question is whether the informant — an unidentified construction worker — was a sufficiently reliable source of information to justify the detectives' actions. The answer is dependent on the extent and quality of police corroboration.

As we have stated, the informant provided information to the police that he had witnessed a silver Chevrolet, with the license plate 604 EHA, being stolen from the Shriner's Hospital where the informant was working, and that the vehicle was being stolen by a Hispanic male in his twenties, wearing a white bandana on his head. The vehicle was found abandoned nearby shortly after being reported stolen, and it matched the informant's information as to make, color, and license plate number. These facts "eliminat[e] the possibility of a police fabrication which is a principal concern in assessing the propriety of a threshold inquiry launched by an anonymous tip." *Commonwealth* v. *Anderson*, *supra* at 399. See *Commonwealth* v. *Lyons*, *supra* at 20. See also *Commonwealth* v. *Stoute*, *supra* at 790-791.

Moreover, one of the defendants fit the description given by the informant. While a white bandana worn on one's head is perhaps not a unique item of clothing, it is sufficiently distinctive to have some corroborative value. Detective Goldrick testified, and the judge did not discredit, that the detective had not seen anyone else wearing a white bandana that day, nor did he notice anyone other than the defendants in the area. Also, the detectives noticed the defendants walking along the street a short distance from the location of the stolen vehicle. Goldrick testified that the defendants entered the taxicab near 19 Grover Street and that the stolen vehicle was abandoned at 46 Grover Street, approximately one-quarter to one-half a block away. Finally, the defendants' movements inside the cab provided the detectives with a further basis for their suspicion. Compare *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991); *Commonwealth* v. *Lyons*, *supra* at 21 (suspicious behavior may heighten police concern).

In sum, the factors presented here provide adequate support for the detectives' "reasonable suspicion that the occupants [had] committed, [or were] committing . . . a crime." *Commonwealth* v. *Moses*, *supra* at 140. "Neither evasive behavior, proximity to a crime scene, nor matching a general description is alone sufficient to support the reasonable suspicion necessary . . . [but these factors may] be considered by the police, and in combination may allow the police to narrow the range of suspects to particular individuals." *Commonwealth* v. *Mercado*, 422 Mass. 367, 371 (1996). See *Commonwealth* v. *White*, 44 Mass. App. Ct. 168, 172-173 (1998). The order allowing the motion to suppress is vacated, and an order shall be entered in the Springfield District Court denying the motion to suppress.

*So ordered.*

*Deborah D. Ahlstrom*, Assistant District Attorney, for the Commonwealth.
*Tracy E. Duncan* for Lucius Redd.