COMMONWEALTH *vs.* AARON T. WADE.

No. 04-P-763.

Worcester. January 10, 2005. - September 30, 2005.

Present: PERRETTA, COHEN, & KATZMANN, JJ.

*Search and Seizure,* Affidavit. *Constitutional Law,* Search and seizure. *Con-trolled Substances. Probable Cause.*

A Superior Court judge did not err in allowing a criminal defendant's motion
to suppress physical evidence seized by police officers from his motor
vehicle, where the affidavit in support of the application for a warrant to
search the vehicle did not establish probable cause to believe that drugs or
related items would be found in that location, either at the time of the issu-
ance of the warrant or at the time of its execution. [651-654] KATZMANN, J.,
dissenting.

INDICTMENTS found and returned in the Superior Court Depart-
ment on May 15, 2003.

A pretrial motion to suppress evidence was heard by *Peter W.
Agnes, Jr.,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
him to the Appeals Court.

*Robert J. Bender,* Assistant District Attorney, for the
Commonwealth.

*Irwin Kwiat* for the defendant.

COHEN, J. After a grand jury returned an eleven-count indict-
ment charging the defendant with possession with intent to
distribute various drugs, the defendant moved to suppress post-
arrest statements and physical evidence seized from his motor
vehicle and his residence. A judge of the Superior Court al-
lowed the motion. In this interlocutory appeal, the Com-
monwealth challenges only one aspect of the judge's decision,

contending that the judge erred in ruling that an affidavit submitted in support of the application to search the defendant's motor vehicle did not establish probable cause to believe that drugs would be found in that location. We conclude that there was no error, and, accordingly, affirm the allowance of the defendant's motion.

1. *Facts.* We summarize the information contained in the affidavit accompanying the search warrant application as well as the judge's findings as to the manner of execution of the warrant, to the extent relevant to the issue presented.[1] On September 12, 2002, the Worcester police, under the direction of Sergeant Timothy O'Connor, applied for two search warrants in connection with their investigation of the defendant for selling illegal drugs — one for a Ford Explorer known to be operated by the defendant, and the other for 15 Liberty Street, Worcester, one of two residences associated with the defendant. The search warrant applications were supported by an affidavit, also dated September 12, 2002, from Worcester police officer Larry T. Williams.

Williams averred that, over the past several weeks, the police had been receiving information from a confidential informant, who previously had provided information leading to unidentified arrests for drug violations, that "he/she has been purchasing cocaine from a black male approximately six feet tall, about thirty years old, who drives a green sport utility vehicle." The affidavit contained the following additional information: On or about August 6, 2002, O'Connor arranged for the informant to purchase cocaine from the individual in question. The police set up surveillance at the informant's location and waited. Within a short time, they witnessed a thirty year old, six foot tall black male drive up to the informant in a green Ford Explorer. The driver got out of the vehicle to meet with the informant, reentered the Explorer and was followed by the police as he drove to 15 Liberty Street. The informant met with the officers

---

[1]The judge authored a twenty-five page decision in which he indicated his disbelief of police testimony and strongly criticized police conduct. Because the findings giving rise to the judge's concerns about police behavior were made in connection with issues other than the one presented on appeal, we do not recite them.

and reported that he/she had purchased cocaine from the individual driving the Explorer. A license plate check revealed that the Explorer was registered to the defendant, who, the police then learned, had an arrest record. A booking photograph of the defendant was obtained, and he was recognized by police as the person who had operated the Explorer and met with the informant. The next day, when the informant was shown the same booking photograph, the informant stated that "this is the person who he/she has been buying cocaine from in the green sport utility vehicle." More than a month later, on or about September 11, 2002, O'Connor made arrangements for the informant to make another drug purchase from the defendant. The informant made contact and arranged to obtain an undisclosed quantity of cocaine. Within minutes, the defendant was observed by police as he emerged from 15 Liberty Street and got into the Ford Explorer. Officers followed the defendant as he drove to meet the informant and then returned to 15 Liberty Street. After the meeting, the informant told O'Connor of having "just purchased the cocaine again from the male operating the green sport utility vehicle." Based upon the appearance and packaging of the substance, the officers believed it to be cocaine. Officer Williams concluded his affidavit by stating that "[b]ased on the aforementioned information and my police training and experience, I believe that [the defendant] is distributing cocaine using his Ford Explorer . . . and that [he] is keeping cocaine for distribution at 15 Liberty Street . . . ."

On the strength of Williams's affidavit, a magistrate issued warrants on September 12, 2002, authorizing the search of 15 Liberty Street and the defendant's Ford Explorer for cocaine and related items. On the morning of September 16, 2002 — four days after the warrant was issued and five days after the defendant was last observed — the police proceeded to arrest the defendant and execute the warrants, without staging another encounter between the defendant and the informant. That morning, O'Connor took up a position near 85 Prospect Street, Worcester, where the defendant lived with his current girlfriend, Sarah Hebert, and saw the defendant leave the premises and enter the green Ford Explorer. The defendant then drove to a vacant lot across the street from 15 Liberty Street, where he

was apprehended and arrested by other officers waiting nearby. At some point thereafter, the police conducted a search of the Explorer. No cocaine was present in the vehicle, but the police found and seized $306.00 and plastic packets of marijuana and heroin.[2]

2. *Discussion.* "[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). "[W]e determine whether, based on the affidavit in its entirety, the magistrate had a substantial basis to conclude that a crime had been committed, *Commonwealth* v. *Donahue*, 430 Mass. 710, 715 (2000), and that the items described in the warrant were related to the criminal activity and probably in the place to be searched. *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985)." *Commonwealth* v. *O'Day*, *supra* at 298. The information in the affidavit must be adequate to establish a timely nexus between the defendant and the location to be searched and to permit the determination that the particular items of criminal activity sought reasonably could be expected to be found there. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983); *Commonwealth* v. *Blake*, 413 Mass. 823, 829 (1992); *Commonwealth* v. *Spano*, 414 Mass. 178, 184 (1993).

Here, the affidavit in support of the search warrant did not establish the requisite timely nexus, as it contained no basis to infer that drugs would be present in the vehicle at the time of the issuance of the warrant or, for that matter, at the time of its execution, five days after the last observation of the defendant with the informant.[3] Nothing in the affidavit suggested that the

---

[2]Police also executed the search warrant for 15 Liberty Street. Because they found no controlled substances at that location, the Commonwealth has not appealed from the judge's ruling with respect to that warrant.

[3]In addition to drugs, the police were authorized to search for "materials, products, and equipment of any kind which are used or intended for use, in manufacturing, processing, delivering, dispensing, distribution, importing and/or exporting cocaine . . . books, records and documents which are used or intended for use in violation of Chapter 94C . . . [and] [a]ll money used or intended for use in the procurement and/or illegal distribution of cocaine . . . ." Except for a passing comment, the Commonwealth's argument on ap-

defendant used the vehicle to store drugs.[4] Contrast *Commonwealth* v. *Dion*, 31 Mass. App. Ct. 168, 174 (1991) (defendant's attempt to secrete automobile key, coupled with history of break-ins at defendant's apartment, permitted inference that drugs were stored in his vehicle as a "safer depository"). Nor did the affidavit establish that the defendant routinely carried an inventory of drugs ready for delivery. If anything, the events described implied that the defendant's practice was to complete only one transaction at a time, leaving to meet his buyer from 15 Liberty Street (as opposed to his residence at 85 Prospect Street), and returning to 15 Liberty Street immediately thereafter.

We consider the present case to be significantly different from *Commonwealth* v. *Burt*, 393 Mass. 703 (1985), upon which the Commonwealth relies. In *Burt*, warrants for the search of the defendants' automobiles and homes were issued in the course of investigating a continuing scheme of larceny of coins from parking meters by a group of parking meter collectors. Over a period of five months, the collectors were observed repeatedly transferring heavy packages from their assigned traffic department vehicles into their personal vehicles, which they parked on the street rather than in the employee parking lot they were entitled to use. Some defendants were also seen transferring such packages into their homes. The court concluded that these observations, described in an affidavit in support of the warrants, were adequate to establish both a physical and temporal nexus between the items sought (coins, tools, and other instrumentalities of the crime) and the defendants' vehicles and houses. *Id.* at 715-716.

As the *Burt* court specifically observed, "[u]nlike drugs, the items sought were not likely to be consumed or destroyed." *Id.*

---

peal is focused solely on the likelihood that drugs would be found in the vehicle. However, as we note later, even if the Commonwealth had made a broader argument, we would reach the same result.

[4]Officer Williams, himself, did not draw the inference that the defendant was storing drugs in his car. Although Williams averred that, based upon the recited information and his experience as a police officer, he believed that the defendant was "keeping cocaine for distribution at 15 Liberty Street," he expressed no such belief with respect to the defendant's vehicle, stating only that he believed that the defendant was "distributing cocaine using his Ford Explorer."

at 716. Rather, because the hasty disposal of large amounts of coins could have been risky to the defendants, there was sound reason to expect that stolen coins were being kept in the defendants' vehicles and residences even though some time had passed between the observations recited in the search warrant affidavits and the warrants' execution. *Ibid.* Here, on the other hand, support for the inference that drugs would be found when the defendant's vehicle was searched was lacking — the only evidence linking the vehicle to criminal activity being the two staged purchases where the defendant arrived in the Explorer.

The Commonwealth argues, citing to cases decided in other jurisdictions, that we should decide that the defendant's drug sales coupled with his use of his vehicle to drive to assignations with the buyer was enough, without more, to establish probable cause. We are unpersuaded that the specific facts of those cases are comparable to the facts of the present case or that the legal principles applied in those other jurisdictions are consistent with Massachusetts law. We also part company with the view expressed in the dissent (but not advocated in terms by the Commonwealth) that the affidavit arguably established a basis for inferring that other evidence of the crimes of distribution and possession (such as cash, ledgers, paraphernalia or drug residue) would be found in the defendant's vehicle. We discern no greater factual support in the affidavit for such an inference than for an inference that drugs proper would be found in the vehicle.

Had the police used other means to investigate, there could well have been a different outcome, as illustrated by *Commonwealth* v. *Staines*, 441 Mass. 521, 525-527 (2004). In that case, police obtained an anticipatory search warrant[5] on the strength of an affidavit describing a series of controlled buys conducted in the defendant's vehicle, including one where the defendant briefly dropped off the undercover officers and immediately returned with additional crack cocaine to fill their

---

[5]"Anticipatory search warrants typically relate to contraband in transit, where a specific described item is known to be on route to a specific person, often at a specified place, and the warrant is issued before the item reaches that person's hands or the premises to be searched." *Commonwealth* v. *Douglas*, 399 Mass. 141, 144 (1987).

request for an amount larger than their original order. The court concluded that these facts gave rise to the reasonable inference that the defendant had obtained the additional cocaine from within the car, rather than from a remote location, and that it therefore was appropriate to issue an anticipatory warrant to search the car for additional concealed cocaine at the time of another controlled buy.

3. *Conclusion.* The judge did not err by concluding that the search warrant affidavit failed to establish probable cause to believe that drugs or related items would be found in the defendant's vehicle.[6] The order allowing the motion to suppress is therefore affirmed insofar as it suppressed evidence found in the search of the defendant's motor vehicle.

*So ordered.*

KATZMANN, J. (dissenting). I respectfully dissent. To give rise to probable cause, an affidavit must contain information allowing the issuing magistrate to determine that the items sought are related to the crime being investigated, and that these items "reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). General Laws c. 276, § 1, as amended by St. 1964, c. 557, § 1, provides that upon a determination of probable cause, a court or justice may authorize the search for specified property or articles, including "property or articles which are intended for use, or which are or have been used, as a means or instrumentality of committing a crime . . . ." In short, the items which are permissible targets of a search are not limited to contraband, but are broader in scope, including evidence of the crime and instrumentalities of the crime. In determining whether an affidavit establishes a sufficient nexus between the place to be searched and the items sought, the affidavit is not to be dissected in a hypertechnical way, but read in a common-

---

[6]Because we affirm the judge's order on this basis, we need not consider the defendant's alternative argument that the veracity of the confidential informant was not established.

sense fashion. *Commonwealth* v. *Burt*, 393 Mass. 703, 714-715 (1985). The issuing judge may rely on normal inferences as well as the type of crime, *id.* at 715, and "may apply his or her common knowledge" in evaluating an affidavit. *Commonwealth* v. *Fenderson*, 410 Mass. 82, 88 (1991).

Putting to one side the question whether drugs would be found in the vehicle, it is respectfully submitted that the affidavit here established probable cause that evidence of the crimes of distribution and possession would be found in the vehicle. Such evidence might include, for example, cash, ledgers, paraphernalia, or residue. See, e.g., *United States* v. *Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991) (drugs and drug paraphernalia). Cf. *Commonwealth* v. *Wilson*, 427 Mass. 336, 342-343 (1998) (forensic evidence of homicide). Had the defendant been arrested immediately after the purchase, a warrantless search of the automobile would have been justified. See *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. 513, 519 (1998). The search warrant here, authorized one day after the targeted conduct, and executed five days after the alleged transaction — involving the same vehicle used in the August and September deals — passes muster.

On appeal, the Commonwealth only adverts to the foregoing argument (which it had raised below),[1] while pressing the more limited theory, also rejected by the motion judge, that the affidavit supported a probable cause determination that drugs would be stored in the vehicle. That storage issue presents a close question. It would have been far more helpful if the affidavit had set forth in greater detail the circumstances of the drug transaction, the connection of the activity to the vehicle, and what had been observed in the vehicle. Nevertheless, where in a pattern of drug dealing, a place to be searched — such as a vehicle — has itself twice been an instrumentality of a crime, reasonable inference supports a probable cause determination that drugs would be found in the vehicle. See generally *United States* v. *Spearman*, 532 F.2d 132, 133 (9th Cir. 1976); *United States* v. *Lamon*, 930 F.2d at 1189.

---

[1] In its brief, the Commonwealth states: "Strictly speaking, the affiant was required to show only that there was probable cause to believe that evidence of drug distribution or possession with intent to distribute would be found in the SUV upon search."