Lu, John T., J.
INTRODUCTION
The defendant, Rafael Martinez (Martinez), moves to suppress cocaine, heroin, and cash recovered from his pocket, as well as cash retrieved from the center console of his car, by Massachusetts State Police on December 6, 2005. The court conducted an eviden-tiary hearing on January 22, 2007, at which state police trooper Jay Conant (Conant) testified.
Finding that police had probable cause to search Martinez, the court denies the motion to suppress as to the cocaine, heroin, and cash found on Martinez. Finding that police lacked probable cause to search the car, the court allows the motion to suppress the cash found in the car.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact.
1. On December 6, 2005, Conant was an experienced drug investigator assigned to Lawrence. While at the Lawrence Police station, he interviewed two informants. He knew the identities of the informants who said they knew a drug seller known as “Jimmy” who would sell them heroin.[1]
2. In the presence of several narcotics investigators including Conant, the informants telephoned Jimmy and negotiated a purchase of two fingers of heroin, which was about twenty grams, and an ounce of cocaine. One of the informants spoke to Jimmy in Spanish. The informant said Jimmy would make the delivery in a dark-green Honda sedan with tinted windows in forty-five minutes to an hour.
3. The delivery was to be to 500 Haverhill Street in Lawrence, a small apartment building at which these police officers had previously made drug arrests.
4. Plainclothes drug investigators and the two informants parked in a driveway next to 500 Haverhill Street. After forty-five minutes to an hour, Jimmy had not arrived. One of the informants called him and he said that he was sending his cousin. One of the informants told Conant that they knew the cousin, that they had purchased illegal narcotics from him and that he was a Hispanic male, 5’6" to 5’7," in his mid to late twenties.
5. About an hour later a dark green Honda with tinted windows pulled up across from 500 Haverhill Street and slowly moved forward, pulled against the curb, and parked.
6. The informants identified the Honda as Jimmy’s. A man got out of the car and as he crossed the street, the informants identified him as Jimmy’s cousin, Martinez. The car, which was parked across the street from 500 Haverhill Street, was a substantial distance from 500 Haverhill Street. Conant radioed other police officers that Martinez was the target.
7. Martinez walked into 500 Haverhill Street and found himself standing, face to face, with Trooper Mark Blanchard (Blanchard), who was in plainclothes but wearing a police badge around his neck. Blanchard told Martinez he was with the state police.[2]
8. Martinez put his hand on his left jacket pocket and Blanchard reached for Martinez’s left arm. There was a struggle. During the struggle, Blanchard touched the pocket Martinez reached for and felt what he thought was heroin or cocaine. It did not feel like a weapon; it felt like it could have been heroin or cocaine but its feel was *320 consistent with many objects.[3] Blanchard thought it was the illegal drugs to be delivered.
9. Blanchard pulled the contents of the pocket out and found the heroin and cocaine.
10. Other police went to the green Honda and found cash in the amount of $4800 in an unknown location, which they seized.[4] Victor Vasquez (Vasquez) was seated in the car. Police arrested him.
11. Conant did not observe the events inside 500 Haverhill Street that are described in findings of fact seven through nine. Shortly after the arrests of Martinez and Vasquez, Conant spoke with Blanchard who described the events. Conant incorporated the description in his report; the report contained an accurate summary of Blanchard’s observations.
12. Likewise, Conant did not observe the search of the car. However, no evidence was offered as to how police searched the car, where they were at the time, or what they believed the items they found were.[5]
DISCUSSION
1.Sufficiency of the Commonwealth’s Evidence of a Search
Conant was the only police officer to testify on behalf of the Commonwealth. Blanchard was present at the beginning of the hearing but was released in the presence of and with the acquiescence of the defendant. Conant’s testimony is admissible because “hearsay testimony is admissible in a motion hearing relating to suppression.” Commonwealth v. Fletcher, 52 Mass.App.Ct. 166, 168 n.2, furth. app. rev. den., 435 Mass. 1104 (2001).
In Commonwealth v. King, 67 Mass.App.Ct. 823 (2006), the Appeals Court addressed the issue of one officer testifying at a motion hearing to another officer’s observations (which led to probable cause to search and arrest). In King, the court held that the Commonwealth could not rely upon the hearsay testimony of the testifying officer as to what the non-testifying officer observed, because the record presented to the court was incomplete as to the events that might provide probable cause to search. King, 67 Mass.App.Ct. at 830. The Appeals Court stated, “On the limited record presented to us, we have no way of determining how [the non-testifying officer] discovered the substance, where he was at the time, what he believed it to be, or whether his belief could be deemed reasonable. Nor do we know exactly what he said upon drawing [the testifying officer’s] attention to the substance. In short, given the incomplete record, there are too many unanswered questions for us to conclude that the police had probable cause to search the defendants’ automobile." Id.
Here, Conant’s testimony provides sufficient details describing events justifying probable cause to search Martinez. Conant spoke to Blanchard shortly after the arrests and put Blanchard’s description of events in his report. While perhaps not ideally presented, the testimony is sufficient to satisfy the Commonwealth’s burden.
2.The Stop
“A person has been seized ... if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall 446 U.S. 544, 554 (1980). No constitutional rights are implicated when an officer approaches an individual in a public place and observes evidence of a crime in plain view, unless the officer has precipitated a stop in the constitutional sense by engaging in “show of authority” factors that make the individual believe he is not free to leave. Commonwealth v. Doulette, 414 Mass. 653, 655-56 (1993). One example of a circumstance that demonstrates a show of authority is the physical touching of the person by the police officer. Commonwealth v. Pimentel 27 Mass.App.Ct. 557, 560, furth. app. rev. den., 405 Mass. 1205 (1989).
The facts in this case are similar to those in Commonwealth v. Nestor N., A Juvenile, 67 Mass.App.Ct. 225, furth. app. rev. den., 447 Mass. 1112 (2006). In Nestor N., A Juvenile, a police officer and a detective of the Boston drug control unit were driving in a van, investigating complaints of drug activity in Dorches-ter. Id. at 227. They saw several males around an illegally parked vehicle engaged in what they believed was a drug transaction. Id. The officer showed his badge and asked if he could talk to the defendant. Id. The defendant “stopped, looked at [OJfficer Colon, then took his right hand from his hip and took a step backwards. [The defendant] placed his right hand into the right side of the waistband of his pants. At this time, [OJfficer Colon attempted to control [the defendant’s] movement of his right hand.” Id. The Appeals Court held that a stop of the defendant occurred under Article 14 when Officer Colon grabbed the defendant’s hands as the defendant reached toward, and perhaps into his waistband. Id. at 229.
The court in Nestor referenced the holding in Pimentel in concluding that the defendant was seized when the officer grabbed his hands. Pimental, 27 Mass.App.Ct. at 560 (physical touching of a citizen by a police officer may be indicative of a seizure).
Similar to the facts in Nestor, Trooper Blanchard grabbed Martinez’s left hand after verbally and visibly identifying himself as a State Trooper. This was a show of authority by the trooper which made Martinez believe that he was not free to leave. The confrontation between Martinez and police was a stop.
3.Was There a Reasonable Suspicion?
Police must have “reasonable suspicion” that the defendant was committing, had committed, or was about to commit a crime in order to conduct an investigatory stop. Commonwealth v. Cheek, 413 Mass. 492, 494 (1992); Commonwealth v. Silva, 366 Mass. 402, 405 (1974). The reasonable suspicion must be “based upon specific and articulable facts and the reasonable inferences that follow from those facts in light of the officer’s experience.” Silva, 366 Mass. at 406. “The facts and inferences underlying the officer’s suspicion *321 must be viewed as a whole when assessing the reasonableness of his acts.” Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981). The determination is made by looking principally to whether the historical facts, viewed from the standpoint of the objectively reasonable police officer, amount to reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 696 (1996); Commonwealth v. Santos, 402 Mass. 775, 780 (1988).
When police suspicion arises from an informant’s tip, the evaluation of the tip’s indicia of reliability is focused on the informant’s reliability and his basis of knowledge. Commonwealth v. Lyons, 409 Mass. 16, 19 (1990). Where the issue is reasonable suspicion as opposed to probable cause, a “less rigorous showing” with respect to a tip’s reliability and the informant’s basis of knowledge is sufficient. Id. at 20-22. As with the two-pronged Aguilar-Spinelli standard in the context of probable cause, in the area of reasonable suspicion, independent police corroboration may make up for deficiencies in either or both the reliability and basis of knowledge prongs. Commonwealth v. Redd, 50 Mass.App.Ct. 904, 906 (2000) (the extent and quality of police corroboration supported the reliability of an unidentified construction worker’s tip).
A. Reliability (Veracity)
When an informant provides veiy detailed and highly specific information, the probability increases that the information came from a reliable source. Commonwealth v. Atchue, 393 Mass. 343, 348 (1984); See Commonwealth v. Parapar, 404 Mass. 319, 323 (1989) (informant who gave the exact location of the transaction, the defendant’s name, accurately described the defendant, and the color and make of the defendant’s car, was reliable).
There is no evidence that the informants had provided information to police in the past, but police knew the identities of the two informants and interviewed them at the Lawrence police station. The informants described Martinez and provided the make, model, and color of the car that Martinez would be driving as well as the location of the sale. After the discussion at the police station, the two informants drove with drug investigators to the site of the arranged sale. The informants remained in the car with police for more than an hour until the defendant arrived at 500 Haverhill Street.
“The strict requirements of reliability which govern an analysis of an anonymous informant’s trustworthiness are relaxed with respect to named and identified sources.” Commonwealth v. Freiburg, 405 Mass. 282, 297 (1989). See also Commonwealth v. Love, 56 Mass.App.Ct. 229, 232-34, furth. app. rev. den., 438 Mass. 1103 (2002) (informant’s willingness to place his anonymity at risk bore heavily upon the reliability of the tip, as identified and readily identifiable individuals expose themselves to charges of filing false reports). Here, the informants’ reliability is enhanced by the fact that the informants not only identified themselves but went to the Lawrence police station to make phone calls to arrange a sale of drugs, and accompanied police to the apartment building at 500 Haverhill Street where police had previously made drug arrests. The informants provided information with a high level of detail that supports a finding that the informants were reliable.
B. Basis of Knowledge
If an informant has first-hand knowledge, and this fact is detailed with sufficient specificity, then the basis of knowledge prong is satisfied. See Commonwealth v. Allen, 406 Mass. 575, 578 (1990). An informant who provides specific information derived from personal observation establishes a basis of knowledge. Commonwealth v. Alvarez, 422 Mass. 198, 207-08 (1996). At least one of the informants claimed to have bought drugs from Martinez, which suggests that the informants observed the seller and the location of the sale. See Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991) (“basis of knowledge” prong of Aguilar-Spinelli test satisfied where the informant saw and bought cocaine).
Highly detailed information is indicative of first-hand knowledge. Commonwealth v. Welch, 420 Mass. 646, 651-52 (1995). In Welch an informant provided police with the defendant’s name and his telephone number, identified him as a Medford firefighter, described his physical appearance, said he would be driving a Ford station wagon, and gave the approximate time for the drug delivery. Id. at 647. The informant did not reveal how he had obtained the information. Id. The Welch court held that, from the level of detail, it could be inferred that the informant had direct knowledge of the defendant and of the criminal activity that was to take place that evening. Id. at 651-52.
Similar to the detailed information provided by the informant in Welch, the informants in this case provided very specific information: that Martinez was a Hispanic male, 5’6" to 5’7" and in his mid to late twenties. The informants said that they knew Martinez, they had purchased illegal narcotics from him in the past, and that he would arrive in a dark-green Honda sedan with tinted windows (the car that the informants previously said Martinez’s cousin owned). The level of detail and the facts of this case suggest that the informants had a sufficient basis of knowledge for the information they provided.
Corroboration by the police may make up for deficiencies in either or both the reliability and basis of knowledge prongs. Redd, 50 Mass.App.Ct. at 906, quoting Lyons, 409 Mass. at 19. Police were able to confirm many details of the tip. The precise location where Martinez went to make the sale, his ethnicify, build, approximate age as well as the car in which he arrived suggest that the informants’ information was reliable, and “more than a casual rumor.” Commonwealth v. Avery, 365 Mass. 59, 63 (1974), quoting Spinelli v. United States, 393 U.S. 410, 416 (1969). The informants’ tip, combined with the corroboration by police, gave police reason to believe that Martinez was committing a crime.
*322 C. Reasonable Suspicion Analysis
Courts may consider a number of factors in determining whether police have reasonable suspicion to stop an individual, including, but not limited to:
(1) the particularity of the descriptive characteristics which distinguish the suspect from other individuals; (2) the population of individuals in the area at the relevant time for which the distinguishing characteristics must serve as a separator for purposes of identifying the suspect; (3) the physical proximity between the place of the reported criminal activity and the place of the investigatory stop; (4) the length of time between the reported criminal activity and the investigatory stop, as well as the temporal setting within which the criminal event occurs (for example, in the very late night or very early morning hours); (5) the actions of the suspect upon the initial police encounter, including evasive or unusual behavior, which includes, but is not limited to, furtive gestures; (6) whether there is independent police corroboration of the report of the criminal activity; (7) the geographic boundaries where the suspect may reasonably be expected to be found; and (8) the characteristics of the place of suspected criminal activity (including whether it is a high crime area. . .).
Commonwealth v. Doocey, 56 Mass.App.Ct. 550, 555-56 (2002).
Several of the factors in Doocey are present in this case. Police received a description of Martinez from the informants; a Hispanic male, 5’6" to 5’7," in his mid to late twenties. The informants also described the car that Martinez drove when making deliveries — a green Honda sedan with tinted windows. About an hour and a half after making the second call (when informants were told that Martinez would make the delivery instead of his cousin, Jimmy) police saw a dark-green Honda with tinted windows pull up across from 500 Haverhill Street, stop, move forward slowly, and then pull against the curb and park. The informants identified the car as belonging to Martinez’s cousin. Then, the informants identified Martinez as the person who got out of the car and crossed the street. At this point, Conant radioed that Martinez was the target. Martinez walked into 500 Haverhill Street, a location where the officers had previously made drug arrests.
While the location of the activity alone does not justify a stop, Brown v. Texas, 443 U.S. 47, 52 (1979), location in a high crime area is a factor to consider. Commonwealth v. Moses, 408 Mass. 136, 140 (1990) (high crime area is one factor to consider). Police arranged the sale that was about to occur with the help of two reliable informants. Police had been to this apartment building in the past and had previously made drug arrests there. The informants identified Martinez as the cousin of Jimmy, whom the informants had called earlier in the day to arrange for the purchase of drugs. Police could reasonably infer that criminal activity was about to occur when Martinez walked into the site of the arranged purchase. There was reasonable suspicion to stop Martinez.
4. Search/Frisk of Martinez’s Pocket
The purpose of the limited Terry-type search is not to discover evidence of a crime, but to allow police to pursue appropriate investigation without fear of violence. Commonwealth v. Almeida, 373 Mass. 266, 270-71 (1977); See Terry v. Ohio, 392 U.S. 1 (1968). The measure is whether a reasonable person in the officer’s position would fear for his safety. Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997). “Evaluation of the propriety of a frisk search involves the entire picture. While one factor by itself may appear innocent . . . and, therefore, insufficient to support a frisk, taken in combination with other factors, there may be the requisite reasonable apprehension about safely or a crime having been committed.” Commonwealth v. Rivera, 33 Mass.App.Ct. 311, 314-15, furth. app. rev. den., 413 Mass. 1107 (1992); See Commonwealth v. Fraser, 410 Mass. 541, 545 (1991).
In Commonwealth v. Lopez, the court held that police, while acting reasonably in suspecting that a drug transaction was about to occur, had probable cause to search the fist of the defendant after he refused to place his hands on the wheel of the car. 55 Mass.App.Ct. 741, 745, furth. app. rev. den., 438 Mass. 1102 (2002). The Lopez court held that “ [a]pprehension of danger aside, [the defendant’s] refusal to put his right hand on the wheel, as ordered, and the clenched fist were highly suggestive, at least, that he was concealing something unlawful, and provided probable cause for a search of that fist.” Id. at 745.
Like in Lopez, Martinez’s actions suggested he was concealing something unlawful. Martinez reached to his pocket immediately after having been told that the man in front of him was with the state police. Police had information that a drug deal was about to take place at 500 Haverhill Street. After the trooper grabbed Martinez’s hand which was in Martinez’s left pocket, there was a struggle. Martinez’s action in placing his hand inside his pocket contributed to the trooper’s reasonable suspicion that Martinez was concealing something unlawful in his hidden hand or inside his pocket.
A protective search may be justified by a suspect’s furtive reactions or belligerent behavior. Commonwealth v. Santiago, 30 Mass.App.Ct. 207, 210-11, furth. app. rev. den., 409 Mass. 1105 (1991) (weapons search was authorized when an erratically driven car stopped, both doors flew open and the suspects leaped from their car as police approached); Rivera, 33 Mass.App.Ct. at 315 (suspect bent forward as if putting something on the floor of the automobile); Commonwealth v. Fraser, 410 Mass. 541, 546 (1991) (suspect refused to remove his hands from his pockets). Martinez acted in a belligerent and combative manner when he struggled with the police officer. The officer’s reasonable suspicion that Martinez was hiding something unlawful and potentially dangerous in his pocket, as well as Martinez’s combative and *323 belligerent behavior provided the Trooper with probable cause to search Martinez’s pocket.
The scope of a Terry-type frisk is not exceeded if, during a lawful pat-frisk, it is immediately apparent to the police officer, in light of his training and experience, that a concealed object is contraband. Minnesota v. Dickerson, 508 U.S. 366, 376-77 (1993). Blanchard thought that the concealed object was the package of illegal drugs to be delivered. As a result, the heroin and cocaine Blanchard found in Martinez’s pocket during the pat-frisk were not the fruit of an unlawful search and should not be suppressed.
5. Probable Cause to Arrest
Probable cause exists when, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense. Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). The court examines the “whole ‘silent movie’ disclosed to the eyes of an experienced narcotics investigator.” Id. at 242. Based on the police officers’ training and experience, as well as information provided by the informants that a drug sale was to occur at 500 Haverhill Street, on finding the objects inside Martinez’s jacket pocket, police had probable cause to believe that the objects were cocaine and heroin, and to justify the arrest of Martinez.
6. Seizure of Cash in the Car
Warrantless searches are perse unreasonable, unless they fall within one of the limited and narrowly drawn exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 (1967); Commonwealth v. Fords, 367 Mass 798, 800 (1975). When the search is conducted without a warrant, the Commonwealth has the burden of proving that the search and seizure falls within the narrow class of exceptions. Commonwealth v. Phillips, 413 Mass. 50, 55 (1992); Commonwealth v. D'Onofrio, 396 Mass. 711, 714 (1986); Commonwealth v. Franklin, 376 Mass. 885, 898 (1978).
A. Sufficiency of the Commonwealth’s Evidence of the Search of the Car
There was little or no evidence as to how police discovered the cash in the car, where they were at the time, or what they believed it to be, in contrast to the evidence of how Blanchard searched Martinez’s pocket. King, 67 Mass.App.Ct. at 830. On this ground alone, suppression of the cash found in the car is required. Anticipating the possibility that this determination is incorrect, the court sets out its analysis of the lawfulness of the search.
B. Search Made Based on Probable Cause and Exigent Circumstances
Without a warrant, the Commonwealth bears the burden of establishing the existence of probable cause and exigent circumstances. Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 227 (1992). Probable cause to search the vehicle existed if police had enough knowledge “to warrant a person of reasonable caution in believing” that it contained drugs. Commonwealth v. Motto, 424 Mass. 117, 120 (1997). The determination of whether there is an exigency is determined as of the time of the search and seizure, or at the time of the stop. Commonwealth v. Markou, 391 Mass. 27, 29-30 (1984). Whether there are exigent circumstances, depends on evaluation of all the circumstances as they appear to police at the time. Commonwealth v. Amaral 16 Mass.App.Ct. 230, 233 (1983).
Probable cause to believe evidence of criminal activity will be found in a particular place must be demonstrated by a “nexus” between the crime alleged and the place to be searched. Commonwealth v. Jean-Charles, 398 Mass. 752, 757 (1986). The nexus “need not be based on direct observation.” Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). It may be found based on the type of crime, the nature of the items sought, and normal inferences as to where such items might be kept by the suspect. Id.
The court may not assume that because a person has drugs on his person, he also has drugs stored in his vehicle. See Commonwealth v. Alvarado, 420 Mass. 542, 554-55 (1995). In Alvarado, the defendants were charged with trafficking more than 200 grams of cocaine and conspiring to traffic in cocaine. Id. at 543. After police pulled over the defendants, they were arrested and taken to the barracks for booking. Id. Police then ordered their car towed to the barracks. Id. Several hours after the arrest, police searched the car and discovered that a coffee maker box found in the car contained a white, rocky substance, later determined to be cocaine. Id. at 547. In discussing the search of the car, the Supreme Judicial Court held that police “did not have probable cause to believe there was any cocaine in the vehicle other than that already seized from [the defendant] . . . Nor was there any evidence of a nexus between the cocaine on [defendant’s] person and the automobile itself.” Id. at 554-55.
Similar to the facts in Alvarado, police did not receive information that the green Honda driven by Martinez contained drugs, nor did police see drugs inside the car. There is no evidence other than the cocaine and heroin found on Martinez’s person, that the car also contained drugs. Police did not have probable cause to search the car on the basis of exigent circumstances.
The requirement of exigent circumstances may be satisfied under the so-called “automobile exception,” which provides that no exigent circumstances are required by Article 14 [or the Fourth Amendment] beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." Motto, 424 Mass. at 124. Under this exception, the warrantless search of an automobile requires only probable cause, provided there is no unreasonable delay in conducting the search. Id. at 122. However, in order to establish probable cause, there must be a sufficient nexus between the criminal *324 activity, the items to be seized, and the place to be searched. See Jean-Charles, 398 Mass. at 757.
In Commonwealth v. Smith, 57 Mass.App.Ct. 907, furth. app. rev. den., 439 Mass. 1105 (2003), the court considered an affidavit in which the confidential informant had no knowledge of any drug activity inside the defendant’s home, and never claimed to have been inside it. The informant did not allege that drugs were stored in the defendant’s home. Id. at 909. Police surveillance established only that the defendant returned to his home after a drug sale, which was not sufficient to establish probable cause to search the defendant’s home. Id. The Appeals Court held that the affidavit lacked specific information placing illegal drugs at the target location. Id. at 908. See also Commonwealth v. Olivares, 30 Mass.App.Ct. 596, 600 (1991) (no specific information in affidavit connecting defendant’s residence to drug sales except observation of defendant departing from house and going to his place of business where controlled buy occurred).
In Commonwealth v. Wade, 64 Mass.App.Ct. 648, furth. app. rev. den., 445 Mass 1107 (2005), the affidavit submitted in support of the application to search the defendant’s car did not establish probable cause that drugs would be found in the car. In Wade, nothing in the affidavit suggested that the defendant used the car to store drugs, nor did it establish that the defendant routinely carried an inventoiy of drugs ready for delivery. Id. at 651-52. The only evidence linking the car to the criminal activity was that the defendant arrived in it when he participated in two purchases. Id. at 653. The court held that the affidavit did not establish a timely nexus between the defendant and the location to be searched, “as it contained no basis to infer that drugs would be present in the vehicle at the time of the issuance of the warrant, or for that matter, at the time of its execution, five days after the last observation of the defendant with the informant.” Id. at 651.
As in Alvarado, Wade and O'Day, there is no evidence other than the cocaine and heroin found on Martinez, that the car contained drugs. Martinez arrived in the Honda, and exited it before making the arranged sale. There is no evidence that the officers viewed contraband inside the car nor did the informants provide information that prior drug sales had occurred inside the car. Police did not have probable cause to search the car under this exception to the warrant requirement.
C. Search Incident to an Arrest
Another exception to the warrant requirement is a search incident to arrest. The doctrine of search incident to arrest requires: (1) a lawful arrest, see Commonwealth v. Santiago, 410 Mass. 737, 743 (1991); (2) a search contemporaneous with defendant’s arrest, see Alvarado, 420 Mass. at 554; and (3) a search limited in purpose to “fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made . . . and removing weapons,” G.L.c. 276, §1. In general, the search incident to a lawful arrest is confined to the physical person of the arrestee and any area within his lunge, reach, or grasp. Chimel v. California, 395 U.S. 752, 763 (1969). No firm rule limits the physical scope of a search incident to arrest to a particular number of feet. Commonwealth v. Elizondo, 428 Mass. 322, 324 (1998).
In Elizondo, police arrested the defendant after a sale of drugs to an undercover officer. Id at 323. The undercover officer purchased cocaine from the defendant in his apartment; the officer asked for more cocaine and the defendant went into the bathroom and returned quickly with two additional packages of cocaine. Id. After the defendant was arrested, police entered the bathroom and seized a false-bottomed deodorant can containing cocaine. Id The Supreme Judicial Court held that because the open bathroom door was within the area of the defendant’s arrest, the search of the canister found in the bathroom was proper. Id at 324-25. The search “may extend to that area which the defendant could have reached with a lunge.” Id at 324 n.2 (citing United States v. Hyde, 574 F.2d 856, 871 (5th Cir. 1978)).
Here, Martinez was arrested inside 500 Haverhill Street, after police found objects that they recognized as heroin and cocaine. The Honda was parked across the street. Although there was no evidence of the precise distance between Martinez and the car, the court concludes that the distance was substantial and that the car was far enough away that he could not reach it in a lunge. The search of the car was not a valid search incident to arrest; this exception to the warrant requirement did not provide police with probable cause to search.
ORDER
Defendant Rafael Martinez’s motion to suppress the cocaine, heroin, and cash found on his person is DENIED. Martinez’s motion to suppress cash found in his car is ALLOWED.

Despite the absence of direct evidence on this issue, the court infers that police would not have, for safety reasons, worked in such close quarters, and in the actual presence of the informants without determining their identities.

Without objection, Conant testified to Blanchard’s observations.

No the extent that police suggest that Blanchard could be certain that it was heroin or cocaine, the court does not credit the testimony and the court declines to draw the inference that he could be certain it was heroin or cocaine.

Conant testified that he did not go to the vehicle and that he was advised by other officers that the cash was found in the center console. This information alone is insufficient to establish probable cause to search the car because there was little or no evidence of where the police were at the time, what they believed the object to be, or how the police discovered the cash in the car. See Commonwealth v. King, 67 Mass.App.Ct. 823 (2006).

Conant’s testimony as to Blanchard’s observations was admitted without objection and no request was made for a limiting Instruction.